**STATE of Missouri, Respondent,**

v.

**Mitchell GRESHAM, Appellant.**

**No. 63483.**

Supreme Court of Missouri,
En Banc.

Aug. 23, 1982.

Kenneth A. Wagoner, West Plains, Russell Shultz, Wichita, Kan., for appellant.

John Ashcroft, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Appellant Mitchell Gresham was convicted by a jury of murder in the first degree based on robbery, § 565.003, RSMo 1978, and sentenced to life imprisonment, § 565.008.2, RSMo 1978. Jurisdiction of the appeal is in this Court. Mo.Const. art. V, § 3.

An abbreviated factual statement will suffice as the decisive point on appeal concerns the selection of the jury panel.

On January 2, 1981, appellant and two others robbed a store in Shannon County, Missouri, and during the robbery Thelma Searcy was killed and her husband Benny was shot but recovered. Appellant was charged with capital murder, § 565.001, RSMo 1978, and, as stated, the jury found appellant guilty of murder in the first degree. A change of venue was taken and the cause was tried in the Circuit Court of Pulaski County. The circuit judge of the 37th Circuit, which includes Shannon County, was transferred by this Court's order to

the 25th circuit, which includes Pulaski County, for the trial of this case.

The statement of facts set forth in appellant's brief regarding the jury selection issue has been adopted by the respondent with one minor exception that will be noted.

Prior to trial appellant moved to quash the jury panel on the grounds that the Board of Jury Commissioners of Pulaski County (board) did not substantially comply with the statutes applicable to a county of the third class having township organization, and that the selection method utilized deprived appellant of a fair and impartial jury randomly selected contrary to the sixth amendment of the United States Constitution. The governing Missouri statutes are §§ 494.230–.250, RSMo 1978.

Section 494.240, among other things, requires the board of jury commissioners to select not less than four hundred persons having all requisite qualifications of jurors by consulting any public records and to maintain that pool of four hundred persons at all times. These persons must be drawn from a township according to its relative population. In this case when the board selected names to comprise the pool mandated by § 494.240, it did not select or

maintain the pool at or above four hundred persons. At the time the instant petit jury was drawn from the pool, there were either 355 or 307 persons in the pool from which forty-eight were drawn that comprised the panel for the instant case. We will assume the pool consisted of 355 persons.[1]

No complaint is made with reference to the manner or method that the 355 were selected. It is not contended that the board failed to comply with § 494.240 in the *method* of selection of the pool. Appellant asserts the failure to maintain a pool of four hundred persons as required by § 494.-240 was violative of that statute. Obviously it was violative of § 494.240, but this was not the only violation.

After the pool of potential jurors is in place—here 355 persons—the next step occurs when a panel is selected from the pool as the petit jurors to try cases for the ensuing term of court. On March 16, 1981, forty-eight persons were drawn from the pool of 355 for the next succeeding term of court in Pulaski County which began in May 1981.

Section 494.240 requires the names of the persons in the pool from each township be written on separate slips of paper of the same size and kind and "be placed in a box

---

1. The pretrial motion to quash the jury panel and in challenge of the array was heard July 14, 1981, just prior to trial. The files for the six townships containing the names of persons in the pool which was used at the March 16, 1981, drawing for the forty-eight-person panel were placed in evidence. There are 307 questionnaires in these files. Nevertheless, it appears the forty-eight questionnaires of persons selected on March 16, 1981, were not put back in after that date. This indicates that there were 307 plus the 48 for a total of 355 on March 16, 1981. The files containing these questionnaires have been filed with this appeal. Many are dated in 1976. One shows the person to be under twenty-one years of age; another that the person cannot read or write; several assert a physical disability; one states the person is not a resident of Pulaski County; and so whether there was an even 355 persons "having all requisite qualifications of jurors" as per § 494.240 is doubtful. See §§ 494.010–.020 for qualifications and disqualifications for service as jurors.

Additionally, the evidence was that at the March 16th drawing the board would discuss

each person as the questionnaire was drawn and passed around. If the board decided the person was, among other things, mentally incompetent, the person was not summoned as one of the forty-eight but the person's name (questionnaire) was *put back* into the township file of the pool. If this is correct, then by so doing the board continued to maintain persons in the pool knowing them to be ineligible to serve as jurors under § 494.020 and therefore not qualified to be a member of the pool under § 494.240. This would effectively decrease the number of qualified persons to even less than the 355. Nevertheless, we will accept the number of persons in the pool at 355 on March 16, 1981, for the purpose of this case. The board should comply with §§ 494.240, 494.010 and 494.020 in making up and supplementing the pool. The pool may contain *over* 400 under § 494.240 and, given the ever-changing status of persons, it would be advisable for the board to select more than 400 in order to have a qualified pool from which to draw the jurors needed for a term of court.

with a sliding lid to be provided for that purpose and thoroughly mixed." There are six townships in Pulaski County so there should have been six boxes containing the names of the pool members from each township. The way it was actually done was that the names of the pool members were kept in six files according to township. These names were on questionnaires for prospective jurors and each questionnaire contained information about that juror which had been supplied by the prospective juror. The questionnaire was signed by the prospective juror and had been supplied prior to the person's name going into the pool required by § 494.240. Presumably these questionnaires contained the information, at least in part, that was considered by the board when making up or supplementing the pool referred to above.

Again, it is obvious that § 494.240 requiring the *names* to be placed in a box and thoroughly mixed was not complied with, nor was the clear intent of the statute that the *slips* of paper contain only the name adhered to. Section 494.250 specifies the method by which the requisite number of jurors to serve for a term of court are to be drawn from the pool. The requisite number is twenty-four regular and twenty-four alternate jurors, for a total of forty-eight.

The manner by which the forty-eight were drawn from the pool of 355 on March 16, 1981, for the May 1981 term is set forth in appellant's brief, which respondent has agreed is correct, as follows:

When the petit jury was selected, Alford Lercher, County Clerk of Pulaski County, was present. The 48 members of the petit jury venire were selected from the questionnaires, which had been placed into folders by township. No jury box was used. If a given number were to be selected from a certain township, then the Circuit Clerk selected that number of questionnaires from the folder for that township. It is unclear whether the questionnaires were face down when the Circuit Clerk selected them. Alford Lercher "couldn't say" on this point. The questionnaires were then passed around, and the jury commissioners decided whether to accept the jurors selected. If the jury commissioners felt that a prospective juror was too likely to convict or too likely to acquit, they would excuse that particular prospective juror. The following excerpt from the testimony of Mr. Lercher, the County Clerk, found at Pages 11 and 12 of the transcript, is informative in this regard:

Q. How are the actual 48 names selected from all those questionnaires?

A. He always starts out with a certain township, if he says "Union Township," we are going to pick so many jurors and so many alternates, then he just takes the list up there and he just reaches in and pulls one out.

Q. Without looking?

A. Without looking, he hands this to the judge, and if he needs five jurors, why he pulls five, and the judge then passes them around, and everybody looks at them and they discuss them, and they read what is on the questionnaire and they discuss whether that person would be able to serve or whether he would be competent, and so on, and they then decide whether they would go ahead and put him on.

Q. Okay now, I believe you mentioned yesterday, that if the person was too old or sick or you know that he is mentally incompetent, that you just put his name back and don't accept it?

A. That's true.

Q. I believe you also indicated that if you know somebody would just assume that somebody was guilty because they were on trial, you would excuse that person also?

A. Well, yes, that is right. Most of us are all around the county and we know the people of our district and we can arrive at the—

Q. You are able to discuss?

A. Discuss the person, that's true.

Q. On the other hand, you indicated that if you know the person would be such that he would turn anybody loose, no matter what, you excuse him?

A. That's true.

As is evidenced by Exhibit G, 48 jurors were selected in the method set forth above. After their selection on March 16, 1981, additional jurors were selected to try the instant case. When the additional jurors were selected, only the Sheriff and the Clerk of the Circuit Court were present. The same basic method of selecting questionnaires from the folders, in which the questionnaires for the various counties were kept, was followed by the Sheriff and the Circuit Clerk when the additional jurors were selected.

After the evidence concerning selection of the jury was introduced, defendant's counsel elucidated the grounds of the written objection, and stated that the grounds included the following: that only 308 names were in the jury pool from which the petit jury was selected, whereas the statute, § 494.230 *et seq.* R.S.Mo., requires that 400 names be in the jury pool; that there was not a quorum of jury commissioners present when the jurors were selected; and that the commissioners used improper and personal decision-making processes in selecting the jury, based on the mental predisposition of the jurors, which destroyed the randomness of the jury selection process. In addition, defendant's counsel raised the objection, prior to the trial beginning, that the method of jury selection also deprived the defendant of a fair, impartial and random jury, in violation of the United States Constitution.

The trial court sustained in part the defendant's motion to quash the jury panel. The trial court discharged certain named jurors, whose names appear on Page 17 of the transcript. The only jurors who were discharged were those "additional jurors" selected after the initial 48 jurors were selected on March 16, 1981. The sheriff then was ordered to pick up an additional 25 jurors, and the trial was recessed until the following morning.

The respondent's modification as to the facts is that the evidence established that the clerk selected the questionnaire containing the name of a juror from each township group without looking. This modification is accepted by the Court as being supported by the evidence.

The clear import of § 494.240 requiring the *names* of the pool members be on separate *slips* of paper of like size and kind, placed in a township box and thoroughly mixed, and the requirement of § 494.250 that directs the clerk of the board to be "so situated as to be unable to see the names on the slips," and "publicly, in the presence of the board of jury commissioners, to draw out names separately and singly" until he has drawn the names of the requisite number—48—"who *shall* serve as petit jurors" is that this be a random selection from those previously put into the pool and that there be no further discretionary screening of those names so drawn.

The statute, § 494.250, does not authorize the board or anyone else to exercise judgmental discretion as to the desirability of any of those persons to be summoned to sit as petit jurors. To the extent that any such discretion is permissible, it should have been exercised at the time the pool was formed pursuant to § 494.240. The pool of 400 hundred persons is, under § 494.240, supposed to consist of only those persons who have "all requisite qualifications of jurors."[2] That requirement exists so that the subsequent drawing of names from that pool can be done randomly and without the board or a member thereof exercising discretionary judgment as to whether the person would be a desirable juror. In the instant case the questionnaire of each of the persons drawn from the township file was passed around among the board members present for discussion of that person. If board members thought the person would convict a defendant just because he was on trial or thought the person would acquit

---

**2.** *See* n.1 *supra.* We, of course, recognize the practical fact that a person who was originally qualified under the statutes to be a member of the panel may have died, moved out of the county, or become otherwise objectively disqualified, and that person's name should be *removed from* the pool when discovered.

regardless of the evidence, that person was not summoned and the questionnaire was put back into the township file.

No untoward motives are ascribed to the board; however, the clear and direct mandate of § 494.250 is that the names drawn by the clerk publicly and in the presence of the board *shall* be the persons to serve as petit jurors at the next ensuing term of court. It does not permit the board to indulge in discretionary judgments or opinions as to the potential predilections of a person whose name is drawn for jury service and on the basis of those opinions to either summon or not summon the person for jury service.

The state points out that the evidence does not show whether any person whose name was drawn by the clerk on March 16, 1981, was, in fact, not summoned because of the subjective opinions of board members concerning the predictable predilection of the person. Therefore, no actual prejudice was demonstrated and the point should be overruled.

The state also contends that § 494.010 which, *inter alia*, requires a juror to be "intelligent" and § 494.020.1(6) which renders ineligible for jury service any person who, in the judgment of the court or other authority charged with the duty of selecting jurors, is incapable of performing the duties of a juror because of mental or physical illness or infirmity, authorizes the board to reject a person whose name is drawn for jury service if it believes the person would convict simply because the defendant was on trial or "turn anybody loose no matter what". *State v. McGill*, 510 S.W.2d 782 (Mo.App.1974), is principally relied on in support of this position.

At the outset one must note that there is a difference between the discretion to be exercised by the board when making up the pool as compared with the board's function at the time a petit jury is drawn from the pool for service during a term of court. The jury commissioners must exercise discretion in the selection of jurors, but that discretion is exercised when the jury pool is created. Section 494.240 provides that the jury commissioners "shall select names of not less than 400 persons *having all requisite qualifications of jurors*". (Emphasis added.) The qualifications of jurors are that they be citizens of the state, residents of the county, sober and intelligent, of good reputation, and over twenty-one years of age. § 494.010. In addition, they must not be convicted felons, illiterates, on active duty in the Armed Forces, licensed attorneys or judges, or mentally ill. § 494.020.1.

Thus, as authorized by the relevant statutes, when the jury commissioners select the four hundred persons to comprise the jury pool, the commissioners must at that time exercise the necessary discretion to assure, insofar as it is possible, that the four hundred are possessed of the requisite qualifications of jurors. But, it is one thing to say that the jury commissioners should exercise discretion to assure that the members of the jury pool have the requisite qualifications, and it is quite another to say that once that determination has been made and the jury pool comprised, and once the name of a prospective juror has been selected at random to serve as a member of the petit panel, that the jury commissioners can then exercise discretion to the extent of determining whether the prospective juror has the right mental predisposition.

Such a practice defeats the very purpose of the jury selection process. A system has been established by statute that provides, insofar as is practical, for a random selection of jurors from a cross-section of the community and from various locations within the county. It is an exercise in futility to go through the steps of selecting four hundred names of qualified jurors from the various townships in the county with a view toward selecting forty-eight of their number at random to serve on the petit panel, and then, during the selection of the forty-eight, to reject certain jurors not because of any failure to possess a statutory qualification to serve as jurors, but because of a failure to possess the right mental predisposition as the jury commissioners see it.

In *State v. McGill, supra*, the court of appeals held that there had been substantial

compliance with the statutes (§§ 494.-240–.250) even though the sheriff, at the "court's" request, commented on persons whose names were drawn for petit jury service and as a result some persons were disqualified. It appears from the opinion that the grounds for not summoning the prospective jurors were factors of ineligibility under § 494.020. The court there said the procedure had for its sole purpose that of streamlining, not vitiating the statutory procedure. The conclusion reached by the court was that there was, overall, substantial compliance with the statutes.

In the instant case the procedure employed did not relate to statutory ineligibilities, but rather to opinions regarding the mental or attitudinal predisposition of a person to serve as a juror in a *criminal* case. That is an area of inquiry generally reserved to the court to be exercised if a juror seeks to be excused by the circuit judge or during voir dire examination in a particular case under our system of jurisprudence. To allow that type of inquiry or discretion to be exercised by the board at the time a panel is drawn for general jury service for a term of court would encourage or at least permit the panel to be restricted to those persons who have the "right attitude", whatever that may be, and does violence to the overall statutory scheme of providing the parties and the court with a cross-section of persons who may have differing subjective attitudes to serve on juries under our system. Presumably, those persons rejected in *State v. McGill, supra,* were removed from the pool as statutorily ineligible to serve on *any* jury under § 494.020. But in the instant case that did not happen because the board simply put the rejected person's name back into the pool. Clearly the board's procedure in the instant case was directly pointed to the desirability of a person to serve as a juror in a *criminal* case and not whether the person was *statutorily ineligible* to serve as a juror generally.

We glean from *State v. McGill, supra,* that the court of appeals concluded that it would have been futile for the sheriff to have even tried to summon some persons for jury service and not that the court approved of a board's not summoning a person whose name was drawn from the pool because of proffered opinions concerning the attitude of the particular juror with respect to jury service in general or to a particular type of case, *i.e.,* criminal. *McGill* recognized the rule that, in the absence of a showing that a defendant was actually and in fact prejudiced by irregularities in the board's procedures, the test to be applied is whether there has been substantial compliance with the statutes, citing *State v. McGoldrick,* 361 Mo. 737, 236 S.W.2d 306 (1951). The court of appeals held there had been substantial compliance with the applicable statutes and affirmed the judgment.

In *McGoldrick,* the names of the pool members were not on paper of uniform size and kind, and the drawing was made by members of the county court who were members of the board of jury commissioners. The Court, quoting from 50 C.J.S. Juries § 155, noted, *inter alia,* that the object of the statutory procedures was to " 'obviate the possibility of packing juries or selecting them with reference to particular cases.' " The Court found the selection method to be less than substantial compliance with the applicable statutes and the conviction was reversed and the cause remanded.

In *Sho-Me Power Corp. v. Fann,* 365 Mo. 1042, 292 S.W.2d 91 (1956), the pool contained less than four hundred names which had been selected from poll books by the clerk of the board, but not by the board acting together. The pool contained over four hundred names prior to the drawing of the petit jury for the February 1955 term of court but had not been supplemented by the time the jurors for the June 1955 term were drawn. Therefore, the pool consisted of less than four hundred names. The Court stated:

> The statute contemplates and provides that when a panel of jurors for a term of court is to be selected that there be four hundred names of persons qualified for jury service in the jury box. Selecting

four hundred names at the beginning of the year to be used for the entire year and not adding any thereto at the following terms of court is not a compliance with the statute.

*Id.* at 1046, 292 S.W.2d at 94. The Court reversed and remanded for a new trial.

In the instant case the statutes relating to the duties of the board were violated in the following respects: (1) substantially less than four hundred names were in the pool in violation of § 494.240; (2) the names of the persons in the pool were not written on separate sheets of paper of the same size and kind, but rather the papers were the questionnaires which contained information in addition to the names in violation of § 494.240, and were not "slips" of paper as mentioned in § 494.250; (3) the names were not placed in boxes and thoroughly mixed so as to insure random drawing in violation of § 494.240; (4) the procedure employed allowed the board to select the petit jury panel with reference to particular cases—criminal—contrary to the overall statutory scheme and *State v. McGoldrick, supra;* and (5) the total procedure included the rejection of persons from the pool based on the perceptions of board members as to the perceived attitude of those persons reference possible conviction or acquittal of a defendant—a matter not amounting to statutory disqualification or ineligibility from jury service. This latter irregularity intruded into an area reserved to the trial court when considering proffered excuses by jurors or when ruling on motions made by attorneys during voir dire examination of a panel in a specific case, and readily lends itself to jury packing.

The Court holds there was not substantial compliance with §§ 494.240–.250, RSMo 1978. What the Court said in *McGoldrick* bears repeating here:

> We do not mean to say that there was any fraud practiced in this case. That is beside the point. The legislature has seen fit to prescribe the manner of selecting juries. The officers charged with this duty must at least substantially comply with the procedure prescribed. Courts

are not authorized to ignore, emasculate, or set aside the statutory provisions.

> We must rule that the motion to quash the jury panel should have been sustained.

361 Mo. at 740, 236 S.W.2d at 308.

The same is true in the instant case and the judgment must similarly be reversed and the cause remanded for a new trial. The constitutional issue and other points raised on this appeal need not be reached.

Although not raised as a point on appeal in this case, the Court deems it advisable to address the legality of the giving of the first-degree-murder instruction under which the defendant was convicted in this case. The defendant had been charged by information with capital murder on March 3, 1981. § 565.001, RSMo 1978. He was convicted by a jury of murder in the first degree. § 565.003, RSMo 1978. In *State v. Baker,* 636 S.W.2d 902, (Mo. banc 1982) it was held that murder in the first degree is not a lesser included offense of capital murder under § 556.046, RSMo 1978. Should the state decide to try the defendant on a charge of first-degree murder, the state must appropriately charge the defendant with that offense.

Reversed and remanded for new trial.

RENDLEN, SEILER, WELLIVER, MORGAN and HIGGINS, JJ., concur.

DONNELLY, C. J., concurs in result.