**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Justin D. SARDESON, Defendant–
Appellant.**

No. 26220.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 17, 2005.

Motion for Rehearing or Transfer
Denied Sept. 8, 2005.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. General, Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

A circuit clerk in charge of seating a venire pool from a master list of prospective jurors inadvertently[1] created a jury list by ordering the computer to seat the jurors according to their birthdates. The first members of the venire were the oldest and the last were the youngest; therefore, the seating was not random but according to age. The question before this Court is whether that jury selection process was a substantial failure to comply with chapter 494.[2] We find that it was and are forced to reverse and remand for a new trial.

Chapter 494, entitled "General Provisions As To Juries," sets forth the procedures for the qualification and selection of jurors. Specifically, section 494.400 provides in pertinent part, "[a]ll persons qualified for grand or petit jury service shall be citizens of the state and *shall* be selected *at random* from a fair cross section of the citizens of the county." (emphasis added). Section 494.415 further provides, "[f]rom time to time and in a manner prescribed by the board of jury commissioners there shall be drawn *at random* from the master jury list the names or identifying numbers of as many prospective jurors as the court may require." (emphasis added). Section 494.420.2 continues, "[w]henever a judge of the circuit court shall require a panel of jurors for jury service, he shall designate the number of jurors required. This num-

---

1. We ascribe good faith to the actions of the circuit clerk as that is not an issue in this case.

2. All references to statutes are to RSMo 2000, unless otherwise specified.

ber of jurors *shall be randomly selected* in a manner specified by the board of jury commissioners from the qualified jury list." (emphasis added).

■ The State does not argue that the jury selection in this case complied in any way with chapter 494; the State initially argues that the claim is waived because an objection was not made at the time of jury selection. However, section 494.465 specifically provides:

1. A party may move to stay the proceedings or for other appropriate relief including, in a criminal case, to quash the indictment if there has been a substantial failure to comply with the declared policy of sections 494.400 to 494.505.... Such motion may be made at any time before the petit jury is sworn to try the case or within fourteen days after the moving party discovers or by the exercise of reasonable diligence could have discovered the grounds therefor, whichever occurs later.

2. .... If the court determines that in selecting either a grand jury or a petit jury there has been a substantial failure to comply with the declared policy of sections 494.400 to 494.505, the court shall stay the proceedings pending the selection of the jury in conformity with the declared policy or grant other appropriate relief.

The clerk's error of seating the jury by age was not discovered until after the trial despite the fact the prosecuting attorney brought to the court's attention that it appeared the jury panel had been seated according to age. That is because the clerk assured the trial court that the jury panel was not seated by age, that it was indeed a random selection. Admirably, the prosecuting attorney pressed the issue a second time because she was "afraid that the court of appeals is going to look at this and say any idiot would have seen that they were seated from oldest to youngest" prior to the trial, but was again assured that the jury panel was randomly seated and the trial was commenced. Clearly, then, defense counsel did not have the actual knowledge that the jury panel was not randomly selected until the court acknowledged that error after the trial to the prosecuting attorney and defense counsel. As soon as defense counsel was informed of the error, he filed an amended motion for new trial, which included a complaint regarding the jury selection process. The request for relief was timely filed.[3]

■ Next, the State argues that the substantial failure to comply with chapter 494 in the selection process did not rise to a constitutional violation. The State admits that a criminal defendant has the right to select a jury from venires that represent a fair cross section of the community, but argues that Defendant failed to make "a prima facie" case that this panel was not a fair cross section of the community. The State's argument misses the mark. Defendant does not have to establish a prima facie case; it is undisputed that this venire panel did not represent a fair cross section of the community. The court advised the parties of such.

Seventy-one people, seated in reverse chronological age, made up the venire panel from which the petit jury was to be selected; the selection process commenced

---

3. The State makes much of the lack of an objection by the Defendant. We fail to see how a complaint by the defense attorney would have had more effect on the court than a complaint by the prosecuting attorney. The court, relying on the assurances of the clerk, denied any further investigation into the matter and proceeded with the trial. Again, we assume good faith on the part of the prosecuting attorney, defense attorney, clerk and court.

with potential juror No. 1, who was the oldest member of the panel, and proceeded until twelve jurors plus two alternates were chosen. After strikes for cause and each party's peremptory challenges, only the members of the venire panel through No. 45 remained eligible for selection as a potential juror. The jury that was ultimately seated to try Defendant, who was twenty-two years of age, ranged in age from seventy-three years to forty-four years of age. In other words, because the seating was not in a random order, there was no possibility that anyone in this venire panel who ranged in age from twenty-three to forty-two years could have been selected for the petit jury because they were seated at the end of the panel. Pursuant to chapter 494, the clerk had no discretion to seat the jury in the courtroom in any fashion other than a random order.

Citing to *State v. Gilmore*, 661 S.W.2d 519, 523 (Mo. banc 1983), the State next argues that, even if there was a substantial deviation from the statute, Defendant must show prejudice. *Gilmore* is not on point. At issue in *Gilmore* was a claim that the presiding judge of the judicial circuit took it upon himself to excuse one of the individuals who was scheduled to be on the jury panel. *Id.* at 523. There was no systematic violation of chapter 494 and no showing that it was a denial of a fair cross section of the community requirement. *Id.* at 523.

■ On the other hand, this case involves violations of the statutory jury selection requirements that are so systematic in nature as to amount to a "substantial" failure to comply with the statutes, thereby entitling a defendant to relief, even in the absence of a clear showing of actual prejudice or a constitutional violation. We find *State v. Gresham*, 637 S.W.2d 20, 26 (Mo. banc 1982), and its progeny to be persuasive on the issue before us.

In *Gresham*, the appellant claimed that the court did not substantially comply with section 494.240 and, most importantly, that the selection method utilized destroyed the randomness of the jury selection. *Id.* at 21. Our supreme court found that the requirements of the then section 494.240[4] requiring the names to be placed in a box and thoroughly mixed were not complied with, nor was the clear intent of the statute, that the slips of paper contain only the name, adhered to so that there be no further discretionary screening of the names drawn. *Id.* at 23. The court specifically stated that no untoward motives were ascribed to the board and rejected the State's claim that there was no actual prejudice. *Id.* at 24. The court stated:

Such a practice defeats the very purpose of the jury selection process. A system has been established by statute that provides, insofar as is practical, for a random selection of jurors from a cross-section of the community and from various locations within the county.

*Id.* The court continued:

"We do not mean to say that there was any fraud practiced in this case. That is beside the point. The legislature has seen fit to prescribe the manner of selecting juries. The officers charged with this duty must at least substantially comply with the procedure prescribed. Courts are not authorized to ignore, emasculate, or set aside the statutory provisions."

*Id.* at 26 (quoting *State v. McGoldrick*, 361 Mo. 737, 236 S.W.2d 306, 308 (1951));

4. Section 494.240, which set out the procedure for selecting jurors, was repealed in 1989. See, now, section 494.410.

**602**

State v. Henke, 820 S.W.2d 94, 96 (Mo. App. W.D.1991); *see also* State v. Barner, 659 S.W.2d 326, 328 (Mo.App. S.D.1983).

Likewise, a process where the sheriff shuffled the cards but passed over potential jurors who had previous substantial service as jurors was found deficient in *State v. Bynum*, 680 S.W.2d 156, 161 (Mo. banc 1984). Again, the court made no intimation that the sheriff made any attempt at improper personal selection of jurors as the good faith of the officer was not at issue in the case. *Id.*

In *State v. McCaw*, 668 S.W.2d 603, 604 (Mo.App. E.D.1984), the eastern district reversed and remanded for a new trial after a judgment where the court delegated the excusing of potential jurors and the summons of talesman. The court concluded,

> In the absence of prejudice to the defendant, the test is whether the statutes were substantially complied with. The purpose of the statutory process is to ensure random selection of jurors, to prevent jury packing or selection of jurors "with reference to particular cases." With the handpicking of over half of the panel, this objective was frustrated here.

*Id.* (quoting *Gresham*, 637 S.W.2d at 25) (internal citations omitted).

Because there was a substantial failure to comply with the statutory mandate regarding a random selection of the jury panel, we have no choice but to reverse this conviction and remand it for a new trial.

GARRISON, P.J., and PREWITT, J., concur.