**Troy C. HUDSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 67082.**

Missouri Court of Appeals, Western District.

Jan. 22, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 2008.

Application for Transfer Denied April 15, 2008.

Laura G. Martin, Esq., Kansas City, MO, for appellant.

Shaun J. Mackelprang, Esq., Jefferson City, MO, for respondent.

Before: HOLLIGER, P.J., LOWENSTEIN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

FACTUAL BACKGROUND:

This appeal is taken from the denial of a Rule 29.15 motion. Appellant Hudson was tried in October of 2003 and convicted of forcible sodomy and violating an adult abuse order. The selection process for the jury venire panel was unusual and has

become the subject of this appeal. At the time of trial, the Jackson County Circuit Court utilized computer software and a database that was developed by the Office of the State Court Administrator (OSCA) to select jurors from the qualified juror list. The database contained the names of about five-hundred-thousand Jackson County residents that were pulled from a voter list supplied by the Office of the Secretary of State and a list of identification card and driver's license holders provided by the Missouri Department of Revenue. This database is referred to as the "master jury list." Weeks before Hudson's trial, the assistant jury supervisor mailed summonses to three-hundred prospective jurors to fulfill the circuit court's needs for the week of October 20–24, 2003. A list was randomly generated from the master jury list in order to select the three hundred recipients. When the summons recipients arrived at the courthouse, they were checked into the jury room and their names were entered into a computerized check-in report. From this report, the software selected a list of persons who would serve on the venire panel for each jury trial that week. This process was intended to be random, but an error in the software caused venire panels to be seated in reverse chronological order with regard to age, or "oldest-to-youngest." The practical effect of this error was that, after seating, voir dire, and strikes, the petit jury would be chosen from the oldest of those remaining on the venire panel.

For Hudson's trial, fifty-seven persons were seated on the venire panel. The oldest individual, at seventy-two years of age, was panelist number one and the youngest person, twenty-two years old, was panelist number fifty-five. All panel members between one and fifty-five were seated in reverse-chronological order. Panelists fifty-six and fifty-seven were thirty-three and fifty-four years of age respec-

tively. After voir dire was conducted and strikes for cause removed some of the panelists, the court announced that the petit jury would be selected from the remainder of the panelists numbered one through thirty-two. Alternates were selected from panelists thirty-three to thirty-seven. This meant that no person under the age of thirty-six was available for selection to the petit jury. The twelve persons chosen to serve as jurors ranged in age from forty to sixty-seven. The two alternates were ages thirty-six and thirty-nine.

At trial, Hudson was represented by retained counsel ("Trial Counsel"). Trial Counsel did not object to the reverse-chronological venire panel seating. He testified at the Rule 29.15 hearing that he did not learn of the seating irregularity until November 3, 2003, more than a week after the verdict was returned in Hudson's trial. On November 3, Trial Counsel was informed by a colleague that there had been a problem with the jury selection process. Since he was leaving, on that same day, for a honeymoon vacation in another country, Trial Counsel waited until November 18 to file a motion for new trial based on the selection process. This motion challenged the reverse-chronological seating, but only on the grounds that the panel did not represent a fair cross section of the community, a claim under the Sixth Amendment to the United States Constitution. The trial court considered the merits of Trial Counsel's motion, but ultimately rejected it and sentenced Hudson to eleven years in prison.

Hudson appealed his conviction to this court in 2004. Appellate Counsel did not include the issue of jury selection in the appeal believing the claim would be stronger if raised as an ineffective assistance of counsel under Rule 29.15. The only issue raised in the appeal was with

regard to the admissibility of evidence in the form of a witness's testimony that she believed the victim's statement. This issue was reviewed under the plain error standard and the conviction was affirmed by this court.

In November of 2005, Hudson filed a Rule 29.15 motion challenging his conviction. In his motion, he argued that he should receive a new trial because of the jury selection irregularity and ineffective assistance received from both trial and appellate counsel. In March of 2006, the circuit court denied that motion. Hudson here appeals the denial of his Rule 29.15 motion, arguing that the circuit court erred in denying such motion because (1) the reverse-chronological seating scheme violated his statutory rights under chapter 494 RSMo, (2) the reverse-chronological seating scheme violated his rights under the Constitution of the United States, (3) Trial Counsel was ineffective in that he failed to object to the reverse-chronological seating scheme, notify the court of the seating issue in a timely manner, or make a record that he notified the court in a timely manner, (4) Appellate Counsel was ineffective in that he failed to appeal the issue of chronological seating, and (5) trial counsel was ineffective in failing to preserve the issue of improper opinion testimony by including the issue in a motion for new trial. Only the first point need be addressed.

### STANDARD OF REVIEW:

This court's review of the motion court's denial of a Rule 29.15 motion is limited to determining whether the findings and conclusion of the motion court are clearly erroneous. *Butler v. State*, 108 S.W.3d 18, 25 (Mo.App.2003) (citing Rule 29.15(k)). " 'Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made.' " *Masden v. State*, 62 S.W.3d 661, 664 (Mo.App.2001) (quoting *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000)).

### DISCUSSION:

As a preliminary matter, the State argues that Hudson's assertion of error with regard to statutory requirements for impaneling the jury is not cognizable in a Rule 29.15 motion. Rule 29.15(a) states in pertinent part:

A person convicted of a felony after trial claiming that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law may seek relief in the sentencing court pursuant to the provisions of this Rule 29.15.

Although the typical claim brought under Rule 29.15 is for ineffective assistance of counsel, Rule 29.15 also applies to claims that the sentence imposed violates state law or constitution or the federal constitution. *See Johnson v. State*, 102 S.W.3d 535, 537 (Mo. banc 2003). However, even constitutional claims are not generally cognizable in a Rule 29.15 motion where such claims should have or could have been raised in a direct appeal. *State v. Tolliver*, 839 S.W.2d 296, 298 (Mo. banc 1992). "Issues that could have been raised in a direct appeal . . . may not be raised in post-conviction motions, except where fundamental fairness requires otherwise and only in rare and exceptional circumstances." *Id.*

Here, there exist exceptional circumstances that would result in fundamental unfairness to Hudson were this court to

refuse to consider his claim in the Rule 29.15 context. As discussed below, Hudson has a claim based on the jury selection requirements of chapter 494, RSMo that warrants relief from his sentence in the form of a new trial. At this point though, he has no other avenue for presenting this claim other than through Rule 29.15. This is due to Appellate Counsel's decision to leave the jury selection issue out of the direct appeal, even though Hudson suggested that he brief and argue the issue. Normally, this circumstance by itself would provide Hudson with an opportunity for relief through an ineffective assistance claim brought against Appellate Counsel. However, a successful claim of ineffective appellate counsel requires "strong grounds that counsel failed to assert a claim of error that would have required reversal had it been asserted" and "that the claim was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it." *Skipper v. State*, 209 S.W.3d 552, 555 (Mo.App.2006). As to obviousness of the claim, there can be no argument. Appellate Counsel could not have overlooked the claim because Hudson specifically requested that it be made. The problem lies with the requirement that the claim be one that would have required reversal. The State asserts that the issue of jury selection was not properly preserved for review. Hudson admits, in arguing his third point, that Trial Counsel's failure to object, move for relief within the time period specified by section 494.465, and make a record of the timeliness of his motion for new trial raised serious questions about whether the jury selection error was preserved. Thus, the likelihood of success had the issue been appealed is questionable: so the claim cannot be said to have required reversal even if it had been asserted. Furthermore, the option of claiming ineffective assistance of trial counsel for failure in preservation of

the issue is precluded by Missouri caselaw finding that the failure to preserve error is not cognizable in a Rule 29.15 motion. *See Everage v. State*, 229 S.W.3d 99, 102–03 (Mo.App.2007).

Chapter 494 of the Missouri Revised Statutes contains requirements relating to the process used to assemble a jury. Multiple sections of chapter 494 require that the procedures be carried out in a random fashion. Section 494.400 states, "All persons qualified for grand or petit jury service shall be citizens of the state and shall be selected at random from a fair cross section of the citizens of the county[.]" Section 494.415 provides, "From time to time and in a manner prescribed by the board of jury commissioners there shall be drawn at random from the master jury list the names or identifying numbers of as many prospective jurors as the court may require." With regard to the selection of prospective jurors to the venire panel, section 494.420.2 provides that "[w]henever a judge of the circuit court shall require a panel of jurors for jury service ... [the] jurors shall be randomly selected in a manner specified by the board of jury commissioners from the qualified jury list."

Enforcement of the chapter 494 provisions is governed by section 494.465, which states in relevant part, "If the court determines that in selecting either a grand jury or a petit jury there has been substantial failure to comply with the declared policy of sections 494.400 to 494.505, the court shall stay the proceedings pending the selection of the jury in conformity with the declared policy or grant other appropriate relief." The State here argues that chapter 494 does not actually require the venire panel to be seated in a random order. It claims that, since the selection of potential jurors was random (see section 494.400), as was the selection of the venire panel from

the qualified list (see section 492.420), there was no substantial failure to comply with chapter 494. According to the State, chapter 494 does not address and, therefore, does not prevent the non-random seating of a venire panel. However, this position directly contradicts the holding in *State v. Sardeson*, 174 S.W.3d 598 (Mo. App.2005).

In *State v. Sardeson*, the southern district examined a case with facts nearly identical to the underlying jury selection issue here. *Sardeson* dealt with a situation where a venire panel was seated with the oldest persons being the first and the youngest persons the last on the panel. *Id.* at 599. The court found that this constituted a substantial failure to comply with chapter 494, explaining that the case involved "violations of the statutory jury selection requirements that are so systematic in nature as to amount to a 'substantial' failure to comply with the statutes ... entitling a defendant to relief, even in the absence of a clear showing of actual prejudice or a constitutional violation." *Id.* at 601. *Sardeson* added, "Pursuant to chapter 494, the clerk [of the circuit court] had no discretion to seat the jury in the courtroom in any fashion other than a random order." *Id.* Finally, the court stated, "Because there was a substantial failure to comply with the statutory mandate regarding a random selection of the jury panel, we have no choice but to reverse this conviction and remand it for a new trial." *Id.* at 602.

■ A review of the record in this case results in a definite and firm impression that a mistake has been made. The jury selection process substantially failed to comply with Hudson's statutory right to a trial by randomly selected jury members. The resulting verdict and judgment and sentence were reached through a trial process that violated the laws of this state.

Rule 29.15 authorizes the sentencing court to provide appropriate relief in such situations. *State v. Sardeson* found the proper relief to be reversal of the conviction and a new trial for the defendant. It was an error of law to deny Hudson's Rule 29.15 motion. The judgment of the motion court is reversed and the cause is remanded for a new trial.

All concur.