**STATE of Missouri, ex rel., Chris KOSTER, Attorney General, Relator,**

v.

**Honorable Shawn McCARVER, Associate Circuit Judge, St. Francois County, Missouri, and Vicki Weible, Circuit Clerk, St. Francois County, Respondents.**

**No. ED 97414.**

Missouri Court of Appeals, Eastern District, Writ Division Seven.

May 15, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 19, 2012.

Application for Transfer Denied Sept. 25, 2012.

Andrew W. Hassell, Assistant Attorney General, Jefferson City, MO, for relator.

Ellen H. Flottman, Assistant Public Defender, Columbia, MO, for respondents.

### Introduction

PATRICIA L. COHEN, Presiding Judge.

In this original proceeding in certiorari, the State, as relator, requests this court to quash the writ of habeas corpus issued in favor of Robert Gnade by the Circuit Court of St. Francois County.[1] The State maintains that the circuit court erred in granting the writ because Gnade failed to show the cause and prejudice necessary to overcome the procedural default of a claim that Gnade could have raised on direct appeal or in a Rule 29.15 motion. We decline to quash the record of the circuit court.

### Background

On May 14, 2008, a Lincoln County jury convicted Robert Gnade of sexual assault and felonious restraint. Gary Grunick, an Assistant Public Defender with the Missouri State Public Defender System, served as Gnade's trial counsel. At the time of Gnade's trial, and unbeknownst to Mr. Grunick, the Lincoln County Circuit Court employed a program that allowed potential jurors to "opt out" of jury service by performing six hours of community service and paying a $50 fee to cover administrative costs (the "opt-out program"). Twelve hundred people were summoned for jury duty during the term in which Gnade's jury trial occurred. Of those 1200

---

1. The State requests that we quash "the writ of habeas corpus." However, the proper remedy, if we find error, is to quash "the record of the circuit court." *See State ex rel. Nixon v. Jaynes,* 63 S.W.3d 210, 213 (Mo. banc 2001).

people, ten persons participated in the opt-out program.

Tom Gabel, the District Defender for Lincoln County, and Mr. Grunick's supervisor, first learned of the existence of the opt-out program on or about July 8, 2008. On July 11, 2008, the Circuit Court of Lincoln County sentenced Movant to ten years in prison. Mr. Grunick was still unaware of the opt-out program at the time of Gnade's sentencing.

Nancy McKerrow, an attorney in the appellate division of the public defender system, represented Gnade on appeal. In his appeal, Gnade did not raise any issues relating to the jury selection procedures in Lincoln County. We affirmed his conviction in *State v. Gnade*, 284 S.W.3d 782 (Mo.App. E.D.2009).

In a deposition prepared for the circuit court, Ms. McKerrow testified that she "wrote the brief" for Gnade's case during February 2009. Ms. McKerrow further testified that she had reviewed Gnade's file and found nothing in the file about the opt-out program. She stated that, had she known about the program, something "would have been in the file" and she would have raised a claim pertaining to it on appeal. Gnade did not file a motion for post-conviction relief.

In August 2010, this court handed down *Preston v. State*, 325 S.W.3d 420 (Mo.App. E.D.2010), which considered whether the Lincoln County opt-out program substantially failed to comply with the Missouri statutes governing juries, Sections 494.400 to 494.505. *Id.* at 421. We held that: "[T]he [Lincoln County Circuit Court's] practice of allowing otherwise qualified jurors to opt-out of obligatory jury service [was] a fundamental and systemic deviation from the declared policy of sections 494.400 to 494.505." *Id.* at 426. We reversed the conviction of the defendant and remanded the case for a new trial. *Id.*

In October 2010, appellate public defender Ellen H. Flottman of the Columbia office received documents from the Circuit Clerk of Lincoln County revealing that potential jurors used the opt-out program to avoid jury service during the term of Gnade's trial. Pursuant to Section 494.465, Flottman filed an amended motion for new trial in Gnade's case on October 25, 2010. Because the trial court did not rule on the motion, it was denied by operation of law on January 23, 2011.

On March 10, 2011, Gnade filed a petition for a writ of habeas corpus in the Circuit Court of St. Francois County. In his petition, Gnade claimed that the warden of the Eastern Reception, Correctional and Diagnostic Center was unlawfully depriving him of his liberty. More specifically, Gnade argued that he was unlawfully convicted because the Lincoln County opt-out program deprived him of due process of law and a jury drawn from a fair cross-section of the population in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution. In March 2011, the circuit court ordered the warden to show cause as to why the court should not grant Gnade's petition for habeas relief.

In the warden's response to the court's show cause order, he contended that Gnade was not entitled to a writ of habeas corpus because he had defaulted his constitutional claim by neglecting to raise it at trial, on direct appeal, or through a timely post-conviction motion. The circuit court held a hearing, and, in September 2011, it issued the writ of habeas corpus and ordered the warden to remand Gnade to Lincoln County for a new trial. The State filed a petition for a writ of certiorari in this court requesting that we quash the writ of habeas corpus. We issued a writ of

certiorari ordering certification and return to this court of a full copy of the record for our review. Thereafter, the Clerk of the St. Francois County Circuit Court filed the record with this court.

### Standard of Review

"A writ of certiorari requires an inferior court to produce a certified record of a particular case for review for irregularities." *State ex rel. Koster v. McElwain*, 340 S.W.3d 221, 231 (Mo.App. W.D. 2011) (*citing* Black's Law Dictionary 228 (6th Ed.1990)). "It is available to correct judgments that are in excess or an abuse of jurisdiction, and that are not otherwise reviewable by appeal." *State ex rel. Nixon v. Sprick*, 59 S.W.3d 515, 518 (Mo. banc 2001). "A grant of a writ of habeas corpus in a lower court is reviewed by writ of certiorari." *Id.* However, we limit our review to determining whether the circuit court exceeded the limits of its authority or abused its discretion. *See McElwain*, 340 S.W.3d at 231.

"An abuse of discretion occurs only when 'the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *McElwain*, 340 S.W.3d at 231 (*quoting State v. Stewart*, 313 S.W.3d 661, 665 (Mo. banc 2010)). "Certiorari presents only questions of law on the record brought up by the return and does not permit consideration of issues of fact." *State ex rel. Reorganized School Dist. R–2 of Newton County v. Robinson*, 276 S.W.2d 235, 236 (Mo.App.1955). "[E]very lawful intendment will be made in favor of the determination and the regularity of the proceedings below." *State ex rel. Shartel v. Skinker*, 324 Mo. 955, 25 S.W.2d 472, 478 (Mo. banc 1930). If we determine that the circuit court has erred, then we quash the record of the court that granted the writ. *See, e.g., State ex rel. Nixon v. Jaynes*, 73 S.W.3d 623, 624 (Mo. banc 2002) (per curiam). If however, we determine that the circuit court did not err, we decline to quash the record. *See, e.g., McElwain*, 340 S.W.3d at 258.

### Discussion

In its first point, the State claims that the circuit court erred in granting Gnade a writ of habeas corpus because Gnade did not show the "cause" necessary to overcome the default of his underlying claim. The State contends that Gnade defaulted his underlying claim by failing to raise it either on direct appeal or in a post-conviction motion. Gnade, however, contends that he timely raised his claim in a motion for a new trial as provided for in Section 494.465. In the alternative, Gnade contends that he demonstrated cause to overcome any default by establishing that he was unaware of the factual basis for the claim at the time of his direct appeal and thereafter.

"A writ of *habeas corpus* can be issued when a person is held in detention in violation of the constitution or laws of the state or federal government." *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 214 (Mo. banc 2001). However, "habeas corpus is not a substitute for appeal or post-conviction proceedings." *State ex rel. Simmons v. White*, 866 S.W.2d 443, 446 (Mo. banc 1993). In general, a defendant may not raise a claim in a habeas proceeding that he failed to raise on direct appeal. *See State ex rel. Engel v. Dormire*, 304 S.W.3d 120, 125 (Mo. banc 2010). Moreover, Rules 29.15 and 24.035 are "designed to provide a 'single, unitary, post-conviction remedy, to be used in place of other remedies' including the writ of *habeas corpus*." *Jaynes*, 63 S.W.3d at 214 (*quoting*

*Wiglesworth v. Wyrick,* 531 S.W.2d 713, 715–16 (Mo.1976)).

■■■ A defendant who fails to raise a challenge to his conviction through post-conviction proceedings "is said to have procedurally defaulted on those claims." *Jaynes,* 63 S.W.3d at 214. When a defendant procedurally defaults on a claim by failing to raise it in a post-conviction proceeding, he waives the claim and "cannot raise [it] in a subsequent petition for *habeas corpus.*" *Jaynes,* 63 S.W.3d at 214. There is, however, an exception to the procedural default rule if the defendant shows both "cause" for the failure to timely raise his claim and "prejudice" resulting from such failure. *McElwain,* 340 S.W.3d at 244 (*quoting Jaynes,* 63 S.W.3d at 215 (internal quotation marks omitted)).

■■ Both the State and Gnade agree that Gnade did not raise the claim outlined in his habeas petition either on direct appeal or in a post-conviction motion. Consequently, the State contends that Gnade defaulted on his underlying claim for habeas relief. Gnade, however, contends that he did not default because he filed a timely motion for a new trial under Section 494.465 within fourteen days of learning the factual basis for his claim that the Lincoln County jury selection procedures were unconstitutional.

Section 494.465 provides, in pertinent part:

A party may move to stay the proceedings or for other appropriate relief including, in a criminal case, to quash the indictment if there has been a substantial failure to comply with the declared policy of sections 494.400 to 494.505 in selecting a grand jury, on the ground of substantial failure to comply with the provisions of sections 494.400 to 494.505. Such motion may be made at any time before the petit jury is sworn to try the case or within fourteen days after the moving party discovers or by the exercise of reasonable diligence could have discovered the grounds therefor, whichever occurs later.

Mo.Rev.Stat. § 494.465.1 (2000). Because Gnade filed a motion for new trial within fourteen days of discovering the grounds for challenging the procedures used to select his jury, Gnade contends that he complied with the requirements of Section 494.465 and avoided procedural default of his claim.

The State contends that Section 494.465 cannot be used to challenge a jury venire after conviction. The State relies on the Missouri Supreme Court's statement in *Brown v. State,* 66 S.W.3d 721 (Mo. banc 2002), that Rules 29.15 and 24.035 are "designed to provide a single, unitary, post-conviction remedy." *Id.* at 725–26 (*quoting Jaynes,* 63 S.W.3d at 214 (internal quotation marks omitted)). The State contends that allowing Gnade to challenge his conviction under Section 494.465 would improperly create a duplicative post-conviction relief system that would contradict the principle articulated in *Brown.*

In *Brown,* after pleading guilty, the defendant filed a Rule 24.035 motion attacking his conviction. *Brown,* 66 S.W.3d at 723–24. The motion court denied the motion because it was filed out of time. *Id.* at 724. The defendant also filed a motion pursuant to Rule 29.07(d) seeking to withdraw his guilty plea because he had suffered a manifest injustice. *Id.* at 724. The relevant portion of Rule 29.07(d) provides: "[T]o correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." Mo. Sup. Ct. R. 29.07(d). The motion court also denied the Rule 29.07(d) motion. *Brown,* 66 S.W.3d at 724.

On appeal, the *Brown* defendant contended that he should be permitted to raise his claim pursuant to Rule 29.07(d) because he was not aware of the factual basis of his claim in time to raise it under Rule 24.035. *Id.* at 728. In determining whether the defendant could proceed under Rule 29.07(d), the Supreme Court rejected the idea that Rule 29.07(d) and Rule 24.035 operated as parallel grounds for relief. *Id.* at 727. Despite recognizing that "[t]he language of Rule 29.07(d) provide[d] some support for [the defendant's] argument," the Court determined that to allow a defendant to challenge his conviction under Rule 29.07(d) "would serve no useful purpose" and "would add another level of complexity to what can already be a lengthy and complex post-conviction process." *Id.* at 728, 730.

However, the Supreme Court did not leave defendants entirely without a remedy. The Court noted that in *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210 (Mo. banc 2001), it had recognized that a defendant could pursue a time-barred Rule 29.15 claim through a writ of habeas corpus if the defendant established the cause and prejudice necessary to overcome the procedural default. *Id.* at 725–26. The Court also noted that two cases, *Brown v. Gammon*, 947 S.W.2d 437 (Mo.App.W.D.1997) and *Reynolds v. State*, 939 S.W.2d 451 (Mo.App. W.D.1996), allowed defendants to pursue claims via habeas corpus if the facts underlying those claims had not been known to them during the time period for filing a Rule 24.035 motion. *Brown v. State*, 66 S.W.3d at 729–30.

Concluding that the approach taken in *Brown v. Gammon* and *Reynolds* "[had]

merit," the Court held: "[I]n cases such as [the defendant's], in which a person asserts a claim that comes within those enumerated under Rule 24.035, but that the person asserts he could not bring within the time limits set out in that rule, then habeas corpus rather than Rule 29.07(d) provides the mechanism by which the person may attempt to obtain relief." *Id.* at 730. The Court further held that a defendant seeking relief under habeas corpus must establish both cause and prejudice to overcome his procedural default in failing to timely file his claim pursuant to Rule 24.035. *Id.* at 723.

▮ Applying the analysis of *Brown*, we agree with the State that Gnade did not avoid a procedural default by moving for a new trial pursuant to Section 494.465. Like the defendant in *Brown*, Gnade attempts to use Section 494.465 to collaterally attack a conviction based upon facts not known to him during the time that he could have sought post-conviction relief. Although the language of Section 494.465 provides some support for Gnade's approach, permitting defendants to challenge their convictions through a Section 494.465 motion undermines the Supreme Court's explicit goal of maintaining a single, unitary system of post-conviction relief. Relying on the principles articulated in *Brown*, we hold that where a defendant fails to utilize available post-conviction remedies to challenge jury selection procedures during the applicable time frame, he may petition for a writ of habeas corpus but must demonstrate cause and prejudice sufficient to overcome his procedural default.[2]

**2.** Gnade relies on *State v. Sardeson*, 174 S.W.3d 598 (Mo.App. S.D.2005), for the principle that a motion for a new trial under Section 494.465 is sufficient to preserve faulty jury selection procedures for review. However, *Sardeson* is not applicable to this case.

The *Sardeson* court determined that an amended motion for a new trial under Section 494.465 was sufficient to preserve a defendant's claim for a direct appeal. *Id.* at 600. However, *Sardeson* did not consider whether a motion for new trial based on

▆▆▆ Having determined that Gnade did not avoid default of his claim by filing a motion for a new trial under Section 494.465, we consider whether Gnade overcomes his procedural default. In Missouri, a habeas petitioner may show cause for a procedural default by demonstrating that his claim was not "known to him" in time to include it in a direct appeal or a post-conviction motion. *State ex rel. Engel v. Dormire*, 304 S.W.3d 120, 125–26 (Mo. banc 2010) (*quoting State ex rel. Simmons v. White*, 866 S.W.2d 443, 446 (Mo. banc 1993) (internal quotation marks omitted)). *See also Gehrke v. State*, 280 S.W.3d 54, 58–59 (Mo. banc 2009); *Brown v. State*, 66 S.W.3d 721, 726 (Mo. banc 2002); *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 215 (Mo. banc 2001); *White v. State*, 779 S.W.2d 571, 572 (Mo. banc 1989).

Here, the record supports the circuit court's determination that the factual basis for Gnade's claim was not known to him during the time available for filing for post-conviction relief. Gnade's trial attorney, Mr. Grunick, testified that he did not learn about the faulty jury selection procedures in Lincoln County until after Gnade's trial and sentencing. Gnade's appellate counsel, Ms. McKerrow, testified that she never told Gnade about the problems with the jury selection procedure in Lincoln County. Gnade himself testified that he did not learn about the procedures until his habeas counsel informed him. In light of these unrebutted facts, we cannot say that the circuit court abused its discretion in determining that Gnade demonstrated cause to overcome his procedural default.

▆▆ The State asserts that Gnade's claims were, in fact, known to him because his appellate attorney, Ms. McKerrow, became aware of the problems with the Lin-

coln County jury selection procedures before Gnade's direct appeal was decided. However, the State cites no Missouri authority for the principle that we may impute an attorney's knowledge of a defaulted claim under these circumstances to his or her client in a state habeas context. Even if we accept as true, however, the principle that a defendant is bound by his attorney's knowledge of a defaulted claim of the type present here, the record in this case refutes the State's assertion that Ms. McKerrow knew about the problems with the Lincoln County jury selection procedures at the time that she was working on Gnade's appeal. In her deposition prepared for the circuit court, Ms. McKerrow, testified that she "read [Gnade's] entire file" and found nothing in the file about the opt-out program. Ms. McKerrow further testified that, had she known about the program, something "would have been in the file" and she would have raised the issue on appeal.

Nevertheless, the State contends that the invalid jury selection procedures in Lincoln County were known to Ms. McKerrow during the time period for filing a direct appeal because someone in the public defender's office sent an e-mail to "all appellate and post-conviction attorneys in the Columbia public defender office" notifying them of the jury selection problems in Lincoln County on July 28, 2008. Because Ms. McKerrow was in the appellate division of the Columbia public defender's office, the State argues that she "should have received that general email about the Lincoln County jury selection procedures."

The record refutes the factual inference that the State seeks to draw. In her deposition, McKerrow testified that there

---

Section 494.465 filed after the expiration of the time for both a direct appeal and post-

conviction motions operates to preserve a claim raised in a writ of habeas corpus.

was neither a memorandum nor an e-mail regarding the Lincoln County jury selection procedures in her file for Gnade's case. Ms. McKerrow further testified that, "[i]f there would have been an e-mail, [she] would have placed it in [her] file." Thus, the record reflects that McKerrow did not actually receive the e-mail. Furthermore, Ms. McKerrow testified that she did not recall learning about the jury selection issue during 2008. The circuit court explicitly found Ms. McKerrow to be a credible witness, and we defer to the circuit court's findings of fact. *See State ex rel. Koster v. McElwain,* 340 S.W.3d 221, 232 (Mo.App. W.D.2011). Thus, the record does not support the State's assertion that Ms. McKerrow knew about the Lincoln County jury selection procedures while representing Gnade on appeal.

The State also contends that Gnade failed to show cause for his procedural default because there was no impediment to his filing a Rule 29.15 motion. While the State acknowledges that the circuit court made a factual finding that Gnade was not aware of his claim during the time period for filing a Rule 29.15 motion, the State contends that Gnade could have filed a *pro se* Rule 29.15 motion without "any legal analysis or case citations" and that a court-appointed post-conviction attorney "would have researched his claims for relief—and almost certainly would have found the jury selection issue."

The State's argument is without merit. The State cites no authority for the proposition that a defendant must file a Rule 29.15 motion in order to preserve a claim of which he has no knowledge. Such a principle would conflict with the Missouri Supreme Court's statement in *Brown v. State,* 66 S.W.3d 721 (Mo. banc 2002), that a habeas petitioner may overcome a procedural default by demonstrating that his claim was not "known to [him] in time to include it in a Rule 29.15 motion." *Id.* at 726. Furthermore, the State's argument is based on mere speculation and conjecture. There is nothing in the record to support the State's claim that Gnade's post-conviction counsel would have discovered the Lincoln County jury issue had Gnade simply filed a motion for post-conviction relief. We decline to adopt a rule that would force convicted defendants to move for post-conviction relief even when they are not aware of any grounds for doing so. Point denied.

In its second point, the State urges us to quash the writ of habeas corpus because Gnade cannot show that the Lincoln County jury selection procedures resulted in prejudice to him. In its brief, the State concedes that this argument conflicts with our decision in *Preston v. State,* 325 S.W.3d 420 (Mo.App. E.D.2010). Nevertheless, the State maintains that *Preston* was wrongly decided and requests that we overrule our previous decision. We have reviewed the State's arguments and find no basis to reconsider our decision in *Preston.* Point denied.

### *Conclusion*

We affirm the judgment of the circuit court granting the writ of habeas corpus and ordering that Gnade be remanded to Lincoln County for a new trial.

KATHIANNE KNAUP CRANE, J., and ROY L. RICHTER, J., concur.