**STATE ex rel. Gary W. ENGEL, Petitioner,**

v.

**Dave DORMIRE, Superintendent, Respondent.**

**No. SC 90314.**

Supreme Court of Missouri, En Banc.

Feb. 23, 2010.

Kent Gipson, Law Office of Kent Gipson, LLC, Kansas City, MO, for petitioner.

Chris Koster, Attorney General, Andrew W. Hassell, Assistant Attorney General, Office of Missouri Attorney General, for respondent.

MARY R. RUSSELL, Judge.

At issue in this case is whether habeas petitioner Gary Engel's convictions should be vacated because they are undermined by newly discovered evidence. This Court finds that material impeachment information was wrongly undisclosed to Engel during his trial, which violated his due process rights pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10

L.Ed.2d 215 (1963). Accordingly, Engel's convictions are vacated.

## I. Procedural Background

Engel was arrested in July 1990 on charges stemming from a 1984 armed kidnapping. The State alleged that Engel, along with accomplices Steven Manning and Thomas McKillip, was hired by drug-dealer Anthony Mammolito to kidnap and rob Charles Ford, a competing drug dealer. The State alleged that the kidnappers, masquerading as drug enforcement agents, took Ford and his associate to a "safe house" and coerced payment of a ransom.

The crime was not investigated actively until 1989, when authorities interviewed Mammolito while he was in a federal prison on an unrelated matter. Based largely on Mammolito's testimony, Engel was convicted by a jury in June 1991 of two counts of kidnapping and two counts of armed criminal action. Consecutive sentences were entered against him for each count, resulting in a total sentence of 90 years imprisonment.[1] Engel's accomplice, Manning, also was convicted in the kidnapping and sentenced to two life sentences.

Engel appealed and moved for post-conviction relief, but his efforts at relief were unsuccessful, and his convictions were affirmed in 1993. *State v. Engel,* 859 S.W.2d 822 (Mo.App.1993). Acting pro se in 2003, Engel unsuccessfully sought habeas corpus relief in Missouri's courts and was denied discretionary review of his case by this Court. He also unsuccessfully sought habeas corpus relief in the federal courts.

Manning, however, did obtain federal habeas corpus relief from his kidnapping convictions after the federal court determined that his convictions were based on improper testimony from a jailhouse informant. *Manning v. Bowersox,* 310 F.3d 571, 575–77 (8th Cir.2002). Manning was released from Missouri's custody in 2004 after the prosecutor declined to retry him following the reversal of his kidnapping convictions.

Manning brought a federal civil suit against Chicago-based FBI Agent Robert Buchan and others whom Manning alleged had framed him in the kidnapping case and for an Illinois murder charge. *Manning v. Miller,* 355 F.3d 1028, 1029–30 (7th Cir.2004). He sought relief pursuant to the Federal Tort Claims Act (FTCA) and *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which authorizes suits for damages based on Fourth Amendment violations by federal officials.[2] Manning asserted that Agent Buchan, the lead investigator in the 1984 kidnapping case, had manufactured false evidence, suborned the perjury of a witness, and secretly paid a witness to testify.

Discovery in Manning's proceedings unearthed important evidence calling into question the testimony Mammolito provided at Engel's and Manning's kidnapping trials. Newly discovered letters from Mammolito to the prosecutor and investigators hinted that Mammolito believed there was an "agreement" for him to be paid. Mammolito also wrote about investigators providing him reports before his trial testimony. Mammolito sent a letter to one of the investigators, Sergeant Quid, to request that he send the "agreement"

---

1. He received a 30–year sentence for each kidnapping count and a 15–year sentence for each count of armed criminal action.

2. Manning also brought a federal civil suit against the Village of Buffalo Grove, Illinois, and two of its former officers, Sergeant Robert Quid and Commander Gary Del Re, for their roles in falsely convicting him in the Missouri kidnapping case. This suit was resolved in a confidential settlement.

money to Mammolito's mother. Another letter later was discovered from an investigator, Commander Del Re, to Mammolito's mother that indicated a check for $500 was enclosed and recognized "the help [Mammolito] provided in this very important case."

Other information revealed during the Manning proceedings evidenced the following: Mammolito made contradictory statements to the prosecution about who was involved in the kidnapping; Sergeant Quid made an undocumented visit to Mammolito; and Mammolito arranged for investigators to assist him in securing release from federal prison.

Following three weeks of testimony and a week of deliberations, the federal jury in Manning's civil trial issued a unanimous verdict in his favor and awarded him $6.5 million in damages. The jury found that Agent Buchan "knowingly induced or caused law enforcement officers to induce" Mammolito "to give false testimony and concealed information from prosecutors."[3] It also found that Agent Buchan had promised to pay Mammolito for his testimony.

In denying the defendants' motion for judgment as a matter of law or for a new trial, the district court found that Manning's evidence supported the jury's verdicts. *Manning v. Miller*, No. 02 C 372, 2005 WL 3078048, at *4 (N.D.Ill. Nov.14, 2005). The court found "[t]he evidence amply supported Manning's contention that Agent Buchan worked in concert with Quid to put together a case to support a prosecution of Manning for the Missouri kidnapping." *Id.* at *7. It noted that the

investigators had a motive to succeed in prosecuting the kidnapping because they believed Manning was a dangerous criminal, but they lacked sufficient evidence to prosecute him for murders and other serious offenses. *Id.* The court also discussed that the jury reasonably determined that Agent Buchan's testimony was not credible. It noted that "[his] demeanor on the witness stand was among the worst this Court has seen in over [24] years as a lawyer and a judge." *Id.* at *8–9.

Ultimately, however, the jury's verdict was set aside because the court determined that the jury's *Bivens* verdict violated the court's determinations under the FTCA. *Manning v. U.S.*, 546 F.3d 430, 431, 438 (7th Cir.2008); *Manning v. U.S.*, No. 02 C 372, 2006 WL 3240112, at *37 (N.D.Ill. Sept.28, 2006). But although the district court found against Manning under the FTCA, it also opined that "[t]here is no question that a deal was made at some point before Mammolito testified at Manning's [Missouri] trials to pay him some amount of money," and it found that "[t]he deal to pay Mammolito was not disclosed to Manning's attorney in the Missouri case." *Manning*, 2006 WL 3240112, at *37. Nothing in the court's decision to set aside the jury's verdict negated the jury's findings that investigators in the kidnapping case had perjured their testimony.

Armed with the information from Manning's suits, Engel renewed his efforts to obtain habeas relief. The motion court denied Engel's new habeas petition in July 2007, and the court of appeals also denied him relief. Engel's plea for habeas relief is now before this Court, nearly 26 years

---

3. The jury also found the agents had induced false testimony from witnesses Carolyn Heldenbrand and Sharon Dugan. Heldenbrand provided identification testimony in Manning's trial. She did not provide identification testimony against Engel, but he cites her discredited Manning testimony as representative of Agent Buchan's wrongful conduct. Dugan was formerly married to Engel. She testified at his trial about statements she said he had made about the kidnapping.

after the alleged crimes for which he was convicted.

## II. Engel's Arguments for Habeas Relief

Engel asserts he is entitled to habeas relief from his convictions because the prosecution violated his due process rights pursuant to *Brady* when it failed to disclose to him material exculpatory and impeachment evidence at trial. He alleges the following information was developed during Manning's proceedings and supports his habeas claims:

1. Agent Buchan and Sergeant Quid conspired to frame Engel and Manning for the 1984 kidnapping.

2. Agent Buchan and Sergeant Quid failed to disclose the deal made with Mammolito in exchange for his testimony against Engel and Manning.

3. Agent Buchan and Sergeant Quid hid from the prosecutor that they had disseminated information to witnesses before their testimony to make them appear more credible.

4. Agent Buchan and Sergeant Quid produced false documentation of witness statements in an effort to persuade the prosecutor to pursue the 1984 kidnapping case.

5. New exculpatory and impeachment evidence was discovered during Manning's federal civil trial that was not disclosed to Manning or Engel during the defense of the kidnapping charges.

In addition to his *Brady* claims, Engel also argues he is entitled to relief from his convictions because the prosecution used perjured testimony during his trial. He further asserts that his armed criminal action convictions must be vacated because the armed criminal action charges were not filed timely.

## III. Standards for Habeas Relief

 "Habeas corpus is the last judicial inquiry into the validity of a criminal conviction and serves as 'a bulwark against convictions that violate fundamental fairness.'" *State ex rel. Amrine v. Roper,* 102 S.W.3d 541, 545 (Mo. banc 2003) (quoting *Engle v. Isaac,* 456 U.S. 107, 126, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). "[A] writ of habeas corpus may be issued when a person is restrained of his or her liberty in violation of the constitution or laws of the state or federal government." *Id.* Habeas proceedings, authorized under Rule 91, are limited to determining the facial validity of a petitioner's confinement. *State ex rel. Simmons v. White,* 866 S.W.2d 443, 445 (Mo. banc 1993). Engel, as the habeas corpus petitioner, has the burden of proof to show that he is entitled to habeas corpus relief. *State ex rel. Nixon v. Jaynes,* 73 S.W.3d 623, 624 (Mo. banc 2002).

 Because Engel's arguments for habeas relief challenge the validity of his convictions and were cognizable in his direct appeal or post-conviction motion, he is afforded habeas review that is extremely limited in scope. *See Simmons,* 866 S.W.2d at 446 (explaining that prevention of "duplicative and unending challenges to the finality of a judgment" requires that habeas claims cognizable on direct appeal or in a post conviction motion be reviewed only if they present jurisdictional issues or "circumstances so rare and exceptional that a manifest injustice" will result if review is not taken). The procedural bar to raising a habeas claim can be overcome by showings of manifest injustice, cause and prejudice, or a jurisdictional defect. *See Amrine,* 102 S.W.3d at 546.

 Engel seeks to overcome the procedural bar to his habeas claims by showing "cause and prejudice." Cause is established where there is a factor at issue external to the defense or beyond its re-

sponsibilities. *Strickler v. Greene*, 527 U.S. 263, 283 n. 24, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (noting that "cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" (internal quotation omitted)). This Court will not undertake habeas review of Engel's claims unless he can "establish that the grounds relied on were not 'known to him' " during his direct appeal or post-conviction case. *Simmons*, 866 S.W.2d at 446.

The State suggests that Engel's claims for habeas relief mirror the claims he raised in his prior pro se habeas petition, wherein he alleged that the prosecution had failed to disclose impeachment evidence related to Mammolito, including that Mammolito was paid for his testimony. Engel's current claims for habeas relief, however, are distinct from his previous claims because they rest on a collection of new evidence developed in Manning's cases and unknown or unavailable when Engel previously sought relief.

█ Justice requires that this Court consider all available evidence uncovered following Engel's trial that may impact his entitlement to habeas relief. *See Amrine*, 102 S.W.3d at 545 (noting that habeas review must assess the totality of all of the evidence uncovered over the years between various judicial reviews to determine if a habeas petitioner established a claim of innocence); *see also Kyles v. Whitley*, 514 U.S. 419, 436–37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (discussing that courts must consider the cumulative effect of excluded evidence in determining if a *Brady* violation occurred). Engel has established the cause needed to overcome the procedural bar to review of his habeas claims by showing that his arguments are based on evidence and information that

was not revealed until Manning's federal lawsuits.

Under the "cause and prejudice" standard, however, it is not enough that Engel's petition rests on newly discovered evidence. He also must establish that he is entitled to habeas review because this Court's failure to review his claims would prejudice him. In the context of whether Engel's *Brady* claims are barred procedurally from habeas review, prejudice is identical to this Court's assessment of prejudice undertaken in assessing Engel's *Brady* claims. Consequently, so long as Engel establishes the prejudice necessary to support his *Brady* claims, he will have shown the required prejudice to overcome the procedural bar for habeas relief.

## IV. *Brady* Violations—Mammolito Evidence

█ Engel's principal argument for habeas relief is that the prosecution wrongly failed to disclose to him material impeachment evidence related to Mammolito, which he argues violated his due process rights under *Brady*. *Brady* holds that " 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *Merriweather v. State*, 294 S.W.3d 52, 54 (Mo. banc 2009) (quoting *Brady*, 373 U.S. at 87, 83 S.Ct. 1194).

█ To prevail in his *Brady* claims based on the Mammolito evidence, Engel must show each of the following: (1) the evidence at issue is favorable to him, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) he was prejudiced. *Strickler*, 527 U.S. at 281–82, 119 S.Ct. 1936; *Merriweather*, 294 S.W.3d at 54.

## A. The Evidence At Issue Is Favorable To Engel

██ To prevail in his *Brady* claim that evidence related to Mammolito was wrongly not disclosed to him, Engel first must establish that the Mammolito evidence at issue was favorable to him. *Id.* The evidence developed in Manning's case related to Mammolito supports Engel's allegations that Mammolito was paid for his testimony against Engel and Manning. New evidence includes a letter to Mammolito's mother that enclosed a $500 payment and mentioned "the help [Mammolito] provided in this very important case." Other evidence supports Engel's allegations that investigators coached Mammolito to align his testimony with their testimony. And Engel now has letters evidencing that investigators sought leniency for Mammolito based on his cooperation in the kidnapping case. This Mammolito evidence is impeachment evidence favorable to Engel that proves the first prong of his *Brady* claim.

## B. The Evidence At Issue Was Suppressed

██ Engel next must prove his *Brady* claim as to the Mammolito evidence by showing that the State suppressed the evidence, either willfully or inadvertently. *Id.* There is no dispute that, during Engel's trial, he was not provided the Mammolito impeachment evidence that is the subject of his habeas claims.

The State contends, however, that Engel cannot show that the Mammolito evidence was suppressed for *Brady* purposes because it did not exist at the time of trial. It argues that the prosecutor cannot be faulted for failing to provide not-yet-existent documents about the alleged "deal"

made between Mammolito and investigators. Documents memorializing the "deal," however, need not have existed at the time of trial; it is enough that the evidence shows that the "deal" itself already existed, even if had not yet been documented.

██ Under *Brady*, due process requires that the prosecution disclose to the defendant any evidence in its possession that is favorable to him and that is material to his guilt or punishment. *Id. Brady* provides that "the individual prosecutor has a duty to learn of any favorable evidence known to *the others acting on the government's behalf* in the case, including the police." *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555 (emphasis added). It is irrelevant to Engel's *Brady* claim that the Mammolito evidence at issue in his habeas request involves non-Missouri investigators. These investigators were part of Missouri's prosecutorial team in the kidnapping cases against Engel and Manning, essentially acting as the prosecutor's agents during the investigation.

Similarly, it is no hindrance to Engel's *Brady* claim that the prosecutor did not have the same knowledge about his case as the investigators.[4] The prosecutor's lack of knowledge about information asserted in a *Brady* claim is not an impediment because the prosecutor is considered " 'the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' " *Strickler*, 527 U.S. at 281, 119 S.Ct. 1936 (quoting

---

4. Engel does not allege that the prosecutor knew at trial of the "deal" between Mammoli-to and investigators.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)).

Engel has satisfied the second prong for his *Brady* claim by showing that the Mammolito evidence that is the subject of his habeas petition was suppressed wrongly.

## C. The Nondisclosure Of The Evidence Prejudiced Engel

 Having proved the first two prongs of his *Brady* claim, Engel also must show that he was prejudiced by the nondisclosure of the Mammolito evidence at issue. *See Merriweather,* 294 S.W.3d at 54. Before determining whether the evidence meets the test for *Brady* prejudice, this Court must assess whether the evidence at issue is material to Engel's case. *See Strickler,* 527 U.S. at 282, 119 S.Ct. 1936. Evidence is material if there is a reasonable probability that its disclosure to the defense would have caused a different result in the proceeding. *Strickler,* 527 U.S. at 280, 119 S.Ct. 1936. The materiality standard for *Brady* claims is established when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles,* 514 U.S. at 435, 115 S.Ct. 1555. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 434, 115 S.Ct. 1555.

The State suggests that the nondisclosure of the Mammolito impeachment evidence was not material or prejudicial to Engel because the defense offered other impeachment evidence related to Mammolito during the trial. Efforts to discredit Mammolito during the trial included attacking his character by highlighting his criminal history and work as a drug dealer, highlighting that he had testified in exchange for not being charged in the kidnapping, and noting inconsistencies in his pre-trial and trial testimonies. The State contends that any evidence that Mammolito had a "deal" with investigators "would have been overkill" and, therefore, was not material impeachment evidence.

 Contrary to the State's assertions, it makes no difference to Engel's *Brady* claim that other Mammolito impeachment evidence was unpersuasive to the jury during the trial. *See Taylor v. State,* 262 S.W.3d 231, 244 (Mo. banc 2008) (noting "[t]he fact that a witness was impeached in other ways does not conclude the materiality inquiry required under *Brady* " because the witness's credibility is not a collateral issue). "In determining whether the suppressed impeachment evidence was material, the reviewing court must evaluate not only the ways that [the witness] *was* impeached, but also the ways that he was *not* impeached that would have been available had [the *Brady* claim] evidence been disclosed." *Id.*

If a witness is presenting false testimony, his testimony is not rendered truthful because he is cross-examined. *See Napue v. People of the State of Illinois,* 360 U.S. 264, 269–70, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (noting that "a lie is a lie" (internal quotation omitted)). The unknown impeachment information, especially when coupled with the impeachment information presented at the time of trial, could have led the jury to a different assessment of Mammolito's credibility. *See Benn v. Lambert,* 283 F.3d 1040, 1056 (9th Cir. 2002). The defense's efforts to impeach Mammolito's credibility "were deprived of significant evidentiary force" by the prosecution's failure to disclose to Engel the evidence supporting his belief that investigators had encouraged Mammolito to testi-

fy falsely about Engel's role in the kidnapping. *Taylor*, 262 S.W.3d at 245.

The *Brady* materiality of the undisclosed Mammolito evidence is shown because (1) "knowledge of [the undisclosed] facts could have significantly undermined the legitimacy of [Mammolito's] testimony and involvement in the case in a way that no other impeachment presented was able to do" and (2) "[h]aving failed to disclose this impeachment evidence, the state was able to claim much greater credibility from [Mammolito's] testimony than the true facts would have warranted." *See id.*

■■■ Having determined that the undisclosed Mammolito evidence was material for purposes of *Brady,* this Court also considers whether the nondisclosure of this material evidence prejudiced Engel so as to warrant habeas relief based on a *Brady* violation. This assessment questions whether Engel's "trial result[ed] in a verdict worthy of confidence." *See Kyles,* 514 U.S. at 434, 115 S.Ct. 1555.

This Court finds that Engel has presented evidence showing that the verdict in his case is not "worthy of confidence." Nondisclosure of impeachment evidence related to Mammolito, who was a chief prosecution witness, caused Engel to suffer *Brady* prejudice because his defense hinged on undermining Mammolito's credibility. *Cf. Merriweather,* 294 S.W.3d at 57 (noting prejudice where impeachment evidence was nondisclosed wrongly and the defendant's credibility was pitted against the witness's credibility). The jury's verdict in Manning's federal civil case demonstrates that the nondisclosed Mammolito impeachment evidence would have aided Engel in discrediting Mammolito's testimony at trial.[5]

## V. Engel Is Entitled To Habeas Relief

Engel has shown that his due process rights were violated because the prosecutor's failure to disclose the Mammolito impeachment evidence resulted in a *Brady* violation. Because he has shown that the nondisclosure of the Mammolito impeachment evidence was prejudicial for *Brady* purposes, he also has established the "cause and prejudice" necessary to overcome the procedural bar to granting him habeas relief. Accordingly, Engel's convictions are vacated.

Because the evidence was sufficient at the first trial to convict, there is no double jeopardy bar to retrial if the State believes it can produce enough evidence to bring Engel's case to a jury. *See Amrine,* 102 S.W.3d at 549. On retrial, however, Engel will have the opportunity to present the exculpatory and impeachment evidence discovered since his trial. Given this new evidence and the long delay since the original trial, during which time Engel has

---

5. The State argues that Mammolito's discredited testimony did not prejudice Engel because Sharon Dugan's testimony at trial provided sufficient evidence to convict him regardless of Mammolito's testimony. Sufficiency of the evidence excluding the discredited testimony, however, is not the correct test for determining *Brady* prejudice. *See Kyles,* 514 U.S. at 434–35, 115 S.Ct. 1555 ("A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict."). Regardless of the other evidence at trial, Engel successfully has demonstrated *Brady* prejudice by showing that undisclosed evidence puts his case in a "different light" and "undermine[s] confidence in the verdict." *See id.* at 434, 115 S.Ct. 1555. While exploration of Engel's *Brady* claim as to Dugan is not necessary, it is worth noting that Engel also has shown new impeachment evidence not available to him at trial evidencing that Agent Buchan induced Dugan to provide false testimony and that Dugan was compensated directly by the FBI for her trial-related travel expenses.

been imprisoned on convictions this Court herein sets aside, an expeditious and final resolution of this case is imperative. *See Amrine,* 102 S.W.3d at 549. This Court, therefore, orders Engel discharged from the State's custody 60 days from the date the mandate issues in this case, unless within that time the State files in the circuit court an election to retry him. If the State so elects, the new trial shall be held expeditiously.

All concur.