STATE ex rel. Reginald **GRIFFIN**, Petitioner,

v.

Larry **DENNEY**, Superintendent, Respondent.

No. SC 91112.

Supreme Court of Missouri, En Banc.

Aug. 2, 2011.

Rehearing Denied Oct. 4, 2011.

74

Kent E. Gipson, Law Office of Kent Gipson LLC, Kansas City, for Petitioner.

Stephen D. Hawke, Attorney General's Office, Jefferson City, for Respondent.

RICHARD B. TEITELMAN, Chief Justice.

Reginald Griffin filed a petition for a writ of habeas corpus asserting that his murder conviction should be vacated because newly discovered evidence proves that the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding material evidence during his trial. Griffin has met his burden of proving entitlement to habeas relief.

## I. *Facts*

On July 12, 1983, James Bausley was stabbed fatally in the chest at the Missouri Training Center for Men in Moberly. Within minutes of the stabbing, prison guards confiscated a sharpened screwdriver from inmate Jeffrey Smith as Smith attempted to leave the area where Bausley was stabbed. Smith was placed in administrative segregation and eventually was convicted of unlawful use of a weapon for possessing the screwdriver. The State never disclosed this evidence to Griffin.

During the investigation of Bausley's murder, inmates Paul Curtis and Wyvonne Mozee told prison investigators that fellow inmate Reginald Griffin stabbed Bausley.

Curtis and Mozee also stated that inmates Doyle Franks and Arbary Jackson assisted Griffin. In 1987, the State charged Griffin with Bausley's murder.

At trial, the State relied primarily on testimony from Curtis and Mozee. Curtis testified that he saw Griffin, Franks and Jackson arguing with Bausley over a television set. According to Curtis, Griffin hit Bausley in the back and then stabbed him in the chest with a foot-long knife that had a yellow rag for a handle. Griffin threw the knife on the roof of the prison gymnasium and fled. Curtis admitted that he agreed to testify in exchange for the State's promise to assist him on unrelated stealing charges and by writing a letter to the board of probation and parole noting his cooperation. Curtis also testified that the State paid his rent for one month following his release on parole.

Mozee died before trial. The State introduced a transcript of Mozee's preliminary hearing testimony. Like Curtis, Mozee testified that Griffin and Bausley were arguing about a television set. Mozee further testified that Griffin, Jackson, Franks and another inmate approached Bausley. Like Curtis, Mozee testified that Griffin stabbed Bausley in the chest with a homemade knife.

Griffin contested Mozee's credibility with the testimony of inmates David Steele and Eddie Johnson. Steele testified that Mozee said he had a deal with prison officials to testify against Griffin to secure an early release. Steele also testified that Mozee said he was going to say "whatever they wanted just as part of the deal." Johnson testified that Mozee told him that he did not witness the stabbing.

In addition to the testimony of Curtis and Mozee, the State also introduced evidence showing that during the investigation of Bausley's murder, prison investigators found a homemade knife near the gym. The knife was 13 inches long, three-quarters of an inch wide and had a yellow cloth wrapped around the handle. The medical examiner concluded that the knife could have caused Bausley's wounds. Preliminary tests detected human blood and proteins on the blade. Subsequent testing was negative for the presence of blood. There was no physical evidence demonstrating that Griffin ever possessed the knife or that he had participated in Bausley's murder.

A jury found Griffin guilty of murder and sentenced him to death. The case was remanded for a new penalty phase because the State introduced into evidence the record of conviction of another person by same name. *State v. Griffin*, 848 S.W.2d 464, 471 (Mo. banc 1993). Griffin was resentenced to life imprisonment without the possibility of parole.

## II. *Habeas petition*

In 2005, Griffin filed a petition for a writ of habeas corpus alleging that the State failed to disclose evidence that that prison guards had seized the sharpened screwdriver from inmate Smith. Griffin asserted that the State's failure to disclose the Smith evidence violated *Brady* because the evidence implicates Smith as an alternate perpetrator.

The circuit court denied the habeas petition. Griffin petitions this Court for habeas relief. As established below, the State's failure to disclose this evidence, considered with reference to the totality of the circumstances in this case, demonstrates substantial doubt as to the factual validity of Griffin's convictions.

## III. *Standard for Habeas Relief*

"[A] writ of habeas corpus may be issued when a person is restrained of his or her liberty in violation of the consti-

tution or laws of the state or federal government." *State ex rel. Engel v. Dormire*, 304 S.W.3d 120, 125 (Mo. banc 2010) (quoting *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 545 (Mo. banc 2003)). Habeas proceedings are limited to determining the facial validity of a petitioner's confinement. *Engel*, 304 S.W.3d at 125. Griffin has the burden of proving he is entitled to habeas corpus relief. *Id.*

■ Griffin's *Brady* claim was cognizable on direct appeal and in his Rule 29.15 motion for post-conviction relief. To overcome the procedural bar to review of his claims, Griffin must demonstrate cause and prejudice, manifest injustice, or a jurisdictional defect. *Amrine*, 102 S.W.3d at 546. As established below, the evidence in this case satisfies the cause and prejudice standard for habeas relief.[1]

■ To obtain relief under the "cause and prejudice" standard, Griffin first must establish "cause" for the procedural default by proving that the claim was not raised timely because of some objective factor external to the defense. *Engel*, 304 S.W.3d at 126 (citing *Strickler v. Greene*, 527 U.S. 263, 283 n. 24, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). Griffin established cause. The State was obviously aware that inmate Smith possessed a weapon while in the prison yard where Bausley was murdered. The State did not disclose this evidence to Griffin. The State's failure to disclose this evidence is an objective factor external to Griffin's defense that constitutes "cause" to overcome the objection that Griffin did not raise this issue at trial.

■ To establish "prejudice," Griffin must demonstrate that the newly discover-

ed evidence resulted in a verdict not "worthy of confidence." *Engel*, 304 S.W.3d at 129 (citing *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). The analysis of prejudice under the "cause and prejudice" standard for habeas review is "identical to this Court's assessment of prejudice undertaken in assessing Griffin's *Brady* claims." *Engel*, 304 S.W.3d at 126. "Consequently, so long as Griffin establishes the prejudice necessary to support his *Brady* claims, he will have shown the required prejudice to overcome the procedural bar for habeas relief." *Id.* To establish prejudice, Griffin does not have to prove definitively that he would have received a different verdict if the Smith evidence had been disclosed. The question is "whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 129. When reviewing a habeas petition premised on an alleged *Brady* violation, this Court considers all available evidence uncovered following the trial. *Engel*, 304 S.W.3d at 126; *see also Kyles*, 514 U.S. at 436–37, 115 S.Ct. 1555 (courts must consider the cumulative effect of excluded evidence in determining if a *Brady* violation occurred).

## IV. *Brady violation*

■ Griffin's *Brady* argument is premised on the assertion that the State failed to disclose to him material evidence pertaining to inmate Smith's possession of the sharpened screwdriver. Griffin's *Brady* claim requires him to show that: (1) evidence that Smith possessed the screwdriver is favorable to him, either because it is exculpatory or because it is impeaching; (2) the State suppressed the evidence, ei-

---

1. Griffin asserts that the newly discovered evidence introduced in the habeas proceedings satisfies both the cause and prejudice and manifest injustice tests for habeas relief.

Because Griffin is entitled to relief under the cause and prejudice standard, there is no need to discuss his claims of manifest injustice.

ther willfully or inadvertently; and (3) he was prejudiced. *Engel*, 304 S.W.3d at 126.

## A. The evidence was favorable

█ The sharpened screwdriver evidence is favorable to Griffin because it tends to exculpate him from the crime and further impeaches the trial testimony of Curtis and Mozee. The evidence is exculpatory because it places inmate Smith in the prison yard with a weapon just minutes after the murder. A search of the inmates following the murder revealed that Smith was the only inmate in the prison found with a weapon in his possession.

The evidence also further impeaches the testimony of Curtis and Mozee. At trial, inmate Leonard Rogers testified that the inmate who ran around the gymnasium immediately after the murder was definitely not Griffin. Although it is apparent that the jury did not believe Rogers, if Griffin could have introduced the evidence that Smith was found with a sharpened screwdriver and was trying to leave the prison yard immediately after the murder, the jury may have found Roger's testimony more credible. This is particularly true given the fact that Smith and Griffin were similar in height, weight and complexion. Because evidence that Smith possessed a sharpened screwdriver supports a viable alternative perpetrator defense, the evidence is favorable to Griffin.

## B. The State suppressed the evidence

█ The State suppressed the fact that prison guards confiscated a sharpened screwdriver from inmate Smith just minutes after Bausley was stabbed. A prison guard reported that a sharpened screwdriver was confiscated from inmate Smith, Smith was placed in administrative segregation for possessing the sharpened screwdriver, and the State successfully prosecut-

ed Smith for possessing the screwdriver. The State was obviously aware of the evidence yet did not disclose it to Griffin. Even if the prosecutor was subjectively unaware that a weapon was confiscated from Smith, the State is nonetheless under a duty to disclose the evidence because the prosecutor is "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *Strickler*, 527 U.S. at 281, 119 S.Ct. 1936 (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). In this case, the murder occurred in prison, and the prison guards were acting on the government's behalf. Therefore, the State had a duty to discover and disclose any material evidence known to the prison guards. *See Engel*, 304 S.W.3d at 127 (even if the prosecutor is unaware of evidence uncovered by investigators, the State is under a duty to disclose that evidence because the investigators are part of the prosecution team).

## C. Griffin was prejudiced

█ Griffin has established prejudice. The present state of the evidence in this case shows that there are at least five substantial post-trial developments that raise serious doubts regarding the factual accuracy of Griffin's conviction. First, if the State had disclosed Smith's possession of the sharpened screwdriver, Griffin's alternative perpetrator theory would have been bolstered significantly. That evidence places Smith at the scene of the crime and establishes that he was the only inmate present in the prison yard who was found to be in possession of a weapon shortly after Bausley was stabbed. Additionally, as noted above, the evidence is

consistent with the testimony of inmate Rogers, who testified that the inmate who ran around the gymnasium immediately after murder was not Griffin.

Second, Curtis recanted his trial testimony in which he stated that Griffin stabbed Bausley. Curtis testified that he did not witness the Bausley stabbing. He also testified that Franks confessed to the murder. Curtis testified that he implicated Griffin to obtain a transfer to another prison.

Third, Franks confessed to murdering Bausley during the course of Griffin's Rule 29.15 proceeding for post-conviction relief. He also testified that, in addition to himself and Jackson, Smith was the third perpetrator. Franks' admission is consistent with Curtis' deposition testimony and with the screwdriver evidence the State failed to disclose.

Fourth, at the hearing on Griffin's habeas petition, inmate Michael Garrett testified that he and Mozee were in the law library when Bausley was stabbed. This contradicts Mozee's deposition testimony in which he stated that he witnessed Griffin stabbing Bausley.

Finally, Jackson, who also was charged with Bausley's murder but acquitted, testified at the habeas hearing that Griffin was not involved with the murder and was not in the prison yard when Bausley was killed. Instead, Jackson testified that Smith, Franks and Bausley were arguing and that both Franks and Smith produced weapons immediately before Bausley was stabbed.

There is no physical evidence connecting Griffin to the weapon found in the gymnasium. There is no physical evidence demonstrating any contact between Griffin and Bausley. Instead, Griffin's continued incarceration for Bausley's murder is premised on the recanted testimony of inmate Curtis and the impeached testimony of deceased inmate Mozee. Overlaying the entire case is the revelation that the State failed to disclose evidence that tended to implicate Smith, impeach Curtis and Mozee, and bolster the trial testimony of inmate Rogers, who maintained that the inmate fleeing the crime scene was not Griffin.

In light of these circumstances, Griffin's conviction is no longer "worthy of confidence." *See Engel,* 304 S.W.3d at 129. Because Griffin has shown that the nondisclosure of the Smith evidence was prejudicial for *Brady* purposes, he has also established the "prejudice" necessary to overcome the procedural bar to granting him habeas relief. Accordingly, Griffin's conviction for the murder of James Bausley is vacated.

## V. *Conclusion*

This Court orders Griffin discharged from the State's custody for the murder of James Bausley 60 days from the date the mandate issues in this case, unless within that time the State files in the circuit court an election to retry him. If the State elects to retry Griffin for the Bausley murder, the trial should commence as soon as practicable.

WOLFF, BRECKENRIDGE and STITH, JJ., concur.

RUSSELL, J., dissents in separate opinion filed.

FISCHER and PRICE, JJ., concur in opinion of RUSSELL, J.

MARY R. RUSSELL, Judge, dissenting.

I respectfully dissent. Because Griffin failed to meet the burden of demonstrating that the State suppressed evidence in violation of due process, as outlined in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), I would not grant habeas corpus relief.

A writ of habeas corpus is available to a person who is restrained of his or her liberty in violation of the constitution or laws of the federal or state government. *State ex rel. Engel v. Dormire*, 304 S.W.3d 120, 125 (Mo. banc 2010). As the habeas corpus petitioner, Griffin bears the burden to establish that he is entitled to habeas corpus relief under *Brady. See id.*

*Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. To establish a *Brady* violation, the petitioner must prove the following: (1) the evidence at issue is favorable to the petitioner, in that it is either exculpatory or impeaching; (2) the State suppressed evidence; and (3) the petitioner was prejudiced. *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *see also Engel*, 304 S.W.3d at 126. Contrary to the majority's conclusion, Griffin failed to establish that the *Brady* violation occurred because he failed to prove the first prong.

The evidence at issue is a sharpened screwdriver seized from another inmate, Jeffrey Smith, shortly after the murder. Griffin claims that Smith's sharpened screwdriver is exculpatory evidence. It had a 3½-inch yellow handle and a 5¼-inch metal portion that was sharpened to a point. Evidence is exculpatory if it is favorable to the accused. *Storey v. State*, 175 S.W.3d 116, 141 (Mo. banc 2005). The sharpened screwdriver is not favorable to Griffin.

The medical examiner testified that the victim's fatal wound was caused by a "knife-like instrument with sharp edges." The size of the victim's fatal wound was ¾ of an inch wide and 5½ to 6 inches deep, piercing the victim's heart and lung. At trial, the State entered into evidence a homemade knife that was found 20 feet from the crime scene. That knife was 13 inches long and ¾ of an inch wide. The knife tested positive for blood, and human proteins were found on it. In contrast, the sharpened screwdriver was clean.

The sharpened screwdriver would not be exculpatory to Griffin. According to the medical examiner's testimony, the 5¼-inch metal portion of the sharpened screwdriver could not have created the victim's wound, which was 5½ to 6 inches deep.[1] Further, the screwdriver was sharpened to a point, or a "sticker," and was not a "knife-like instrument with sharp edges."

Griffin's intent is to use the sharpened screwdriver to suggest that Smith committed the murder. To present an alternate perpetrator theory, there must be a direct connection between the alternate perpetrator and the crime charged. *See State v. Bowman*, 337 S.W.3d 679, 687 (Mo. banc 2011). Griffin presents no direct connection between Smith and the murder. Although Smith's possession of the sharpened screwdriver indicates that he may have had the means to murder the victim, the medical examiner's testimony contradicts that possibility. The evidence of the sharpened screwdriver does not establish that Smith was at the scene of the crime, nor does it remove Griffin from the scene of the crime. As the sharpened screwdriver does not provide a direct connection between Smith and the murder, it would not be admissible at trial. *See State v. Butler*, 951 S.W.2d 600, 606 (Mo. banc

---

1. In addition to his fatal wound, the victim also suffered a cut to his left thigh, in the form of a "Y." Griffin argues that the Y-shaped wound could have been caused by the sharpened screwdriver. Whether the sharp- ened screwdriver could have caused the Y-shaped wound to the thigh is irrelevant because it was not the fatal wound. The medical examiner's testimony did not support Griffin's argument.

1997). And evidence that is inadmissible at trial cannot be used to establish that the State suppressed evidence in violation of *Brady*. *See Wood v. Bartholomew*, 516 U.S. 1, 8, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995).

Because the sharpened screwdriver is not consistent with the victim's wound, it does not establish a direct connection between Smith and the murder. This evidence is not favorable to Griffin in that it is not exculpatory or impeaching. Failing to meet the first prong to prove a *Brady* violation, Griffin has not met his burden as a habeas corpus petitioner.[2]

Accordingly, I would not grant habeas corpus relief.

2. Griffin also failed in proving the second prong of the *Brady* violation test as he did not show that the State suppressed the evidence of the sharpened screwdriver. Griffin alleges that five years after the trial, the information pertaining to the sharpened screwdriver was not found in the defense file. Prior to trial, the Department of Corrections (DOC) made all records and physical evidence available to defense counsel. With the help of DOC staff, Griffin's attorneys made copies of certain documents. If the information pertaining to the sharpened screwdriver was not found in the file, it is possible that the State provided the information, but defense counsel failed to copy it.

Other than the inference of suppression by the State, Griffin presented no direct evidence indicating that the State suppressed the information pertaining to the sharpened screwdriver. This mere inference is unpersuasive to establish that the State suppressed evidence in violation of *Brady*.