STATE of Missouri, Respondent,

v.

Keeton J. CAMPBELL, Appellant.

No. ED 95167.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 20, 2011.

Alexa Pearson, Columbia, MO, for appellant.

Chris Koster, Atty. Gen., John W. Grantham, Jefferson City, MO, for respondent.

GARY M. GAERTNER, Jr., Judge.

### Introduction

The defendant, Keeton J. Campbell (Campbell), appeals his convictions after jury trial for statutory rape in the second degree. Campbell raises one point on appeal: the trial court erred and abused its discretion in admitting in rebuttal a high school photograph of the victim because the State of Missouri (State) failed to disclose the photograph in discovery and the photograph was not proper rebuttal evidence. We affirm.

### Facts

As Campbell does not challenge the sufficiency of the evidence to sustain his conviction, the relevant facts are as follows when viewed in the light most favorable to the verdict. *State v. Baker*, 103 S.W.3d 711, 714 (Mo. banc 2003).

On September 9, 2006, the victim was fifteen years old and lived in Louisiana, Missouri with her mother. At that time, the victim's mother was dating Rick Sidwell (Sidwell) whose daughter Tiffany Sidwell (Tiffany) was friends with the victim. Sidwell and Tiffany lived in Bowling Green, Missouri. The victim regularly went over to Tiffany's residence and sometimes spent the night there.

The victim first met Campbell after another friend of the victim brought him over to her house a few months before September 9, 2006. Campbell told the victim that his name was Mike. Campbell was engaged to be married at that time and he did not give his real name, because he did not want anyone to find out that he was cheating on his fiancee. Campbell came over to the victim's house several times late at night. Campbell asked her if she wanted to be his boyfriend and the victim told him no every time. The victim told Campbell that she was fifteen. Campbell, who was born on March 11, 1978, said he was twenty-something, but actually was twenty-eight years old.

The victim's mother was sometimes at home when Campbell was present, but other times the victim was alone. Campbell attempted to kiss the victim but she told him she did not want to do that. During Campbell's visits, they usually would sit and talk, watch a movie, or listen to music. The victim smoked cigarettes but never drank in front of Campbell. Prior to September 9th, the victim never felt threatened by Campbell as he just wanted her to be his girlfriend. She had never gone anywhere with Campbell prior to September 9th, nor had she seen him anywhere else besides her house.

On September 8th around 10 p.m., Tiffany talked to the victim about staying the night at her apartment in Bowling Green. The victim asked her mother for a ride but she said no as she was going to sleep. The victim then started calling friends to try to find a ride. While the victim was outside calling friends for a ride on her back porch, Campbell saw her and dropped by around 2 a.m.

Campbell again told the victim that he wanted to be with her, but she kept telling

him no. The victim understood his statement to mean that he wanted her to be his girlfriend. She told him that she was trying to go to Bowling Green and he said he would give her a ride.

Campbell drove the victim to Tiffany's residence. The victim went inside the building into Tiffany's apartment which was unlocked, but no one was there. The victim went back downstairs and told Campbell that no one was home and that she was going to wait there for Tiffany. Campbell told the victim that he would take her to look for Tiffany. They went to another residence, but no one was home there either, so Campbell took her back to the apartment. They parked in the back of the building and Campbell followed her up.

Campbell again started talking about wanting the victim to be his girlfriend, but she again said no and told him she was going to stay and she wanted him to leave. The victim went in and shut the door to the apartment as Campbell was still outside. She heard items being moved in the hallway and she went back outside to see what was happening.

The victim saw Campbell coming out of a different room down the hallway. He came back to the victim outside the apartment and asked her if she was sure she did not want to be his girlfriend. The victim stated, "Yeah. I'm sure." Campbell then grabbed her hair and started pulling her into the room he came out of. The victim started screaming and Campbell told her to "shut up." The victim started hitting Campbell and telling him to stop, but he dragged her into the unlit room and pushed her down on the floor, causing her to hit her head. The victim testified that Campbell stated, "I should have just been his girlfriend and that if he couldn't have me, then nobody was going to have me,

and that he would just have to get rid of me."

The victim was scared and thought Campbell was going to kill her. Campbell took off the victim's jeans and underpants. Eventually the victim stopped fighting and started telling him things that he wanted to hear, so he would not kill her. Campbell tried to put a condom on and then penetrated her vagina. After he was done, he put her underwear in his pocket and said they could go home. They left in his car, but he forgot one of his two shirts in the building, so he returned to retrieve it. When Campbell eventually dropped her off at her home, he said to the victim that if she told the police, he would get rid of her.

The victim ran to her mother's room crying hysterically, telling her they needed to leave the house, because "Mike" was going to kill them. Her mother took her to the police station and then Pike County Memorial Hospital. The victim was examined by Dr. Pitney who found semen and prepared a rape kit. Her neck also had marks and scratches. Campbell called the victim a week later asking if she was trying to get him in trouble, but she hung up the phone.

Campbell admitted at trial that he had consensual sex with the victim. Campbell's DNA matched the semen taken by Dr. Pitney. The jury returned a guilty verdict on Count II, statutory rape in the second degree, and a not guilty verdict on Count I, forcible rape. The trial court sentenced Campbell as a prior and persistent offender to twelve years in the Missouri Department of Corrections.

## Discussion

In his sole point on appeal, Campbell argues that the trial court erred and abused its discretion in admitting the victim's high school picture for the school year 2006–2007 (photograph) to rebut

Campbell's testimony because: (1) the photograph was improper rebuttal evidence against Campbell's "affirmative defense" that he thought the victim was over the age of seventeen; (2) the State failed to disclose the photograph during discovery and to comply with Missouri Supreme Court Rule 25.03, violating *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) the trial court's admission of the photograph prejudiced Campbell by preventing him from investigating the photograph's accuracy and finding "other pictures of [the victim] that supported his defense."

Section 566.034 RSMo. (2000) provides that "[a] person commits the crime of statutory rape in the second degree if being twenty-one years of age or older, he has sexual intercourse with another person who is less than seventeen years of age." Campbell's trial strategy was that he had consensual sex with the victim, but he reasonably believed that she was seventeen years of age or older and this was an "affirmative defense" under Section 566.020 RSMo. Cum Supp. (2007). Subsection 3 of this statute provides that "[w]henever in this chapter the criminality of conduct depends upon a child being under seventeen years of age, it is an affirmative defense that the defendant reasonably believed that the child was seventeen years of age or older."

On the second day of a two-day trial, May 28, 2010, Campbell testified during direct-examination as follows:

Q:   ... Now one of the things that has come up is, you know, the impression of [the victim's] age.   How old did you think [the victim] was?

A:   Eighteen.

Q:   Why did you think that?

A:   Because she told me she was eighteen.

. . .

Q:   ... Now so I guess why did you think [the victim] was above eighteen other than she just told you.

A:   Because nobody or her gave me any indication that she wasn't.   I had no reason to assume she was lying to me about her age.

Campbell also testified that the victim smoked cigarettes and that he and the victim drank wine coolers.

The State on cross-examination asked:

Q:   Did she appear to look eighteen to you?

A:   Yes, sir

Q:   Why?

A:   Because she looked like most people that I meet.

Q:   And most people you meet are eighteen?

A:   Well, older.

Q:   Eighteen or older.

A.   Yeah.

After Campbell rested, the State recalled the victim's mother in rebuttal and had her identify the photograph when the victim was fifteen.   Campbell objected that the State failed to turn over the photograph in violation of *Brady v. Maryland,* and that he had no way to investigate the authenticity of the photograph or investigate other pictures.   On the first day of trial on May 27, 2010, Campbell had filed a response to the State's Motion in Limine, which revealed that Campbell "may assert an affirmative defense of reasonable mistake of age."   The State maintained that it had no idea that Campbell was going to testify or what his defense was going to be until the first day of trial, and that the photograph was not exculpatory.   The trial court admitted the photograph into evidence.

"The trial judge determines the scope of rebuttal testimony, subject to review for abuse of discretion." *State v. Gardner,* 8 S.W.3d 66, 72 (Mo. banc 1999). "A trial court has broad discretion in determining the admissibility and scope of rebuttal evidence." *State v. Smith,* 265 S.W.3d 874, 878 (Mo.App. E.D.2008). "This Court will not hamper the exercise of that discretion unless it is clear that the trial court's ruling is against the logic of the circumstances and is 'so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Id.*

"Mere error is insufficient to support a reversal; this court will affirm the trial court's judgment unless the appellant shows that the error was so prejudicial as to deprive him of a fair trial." *State v. Martin,* 211 S.W.3d 648, 653 (Mo.App. W.D.2007). "The test for prejudice where a criminal appellant claims improper admission of evidence 'is whether the improper admission was outcome-determinative.'" *Id.* (citing *State v. Black,* 50 S.W.3d 778, 786 (Mo. banc 2001)).

■ "'Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal of the defendant's testimony or evidence.'" *Gardner,* 8 S.W.3d at 72 (citing *State v. Peterson,* 518 S.W.2d 1, 3 (Mo.1974)). "[R]ebuttal testimony is not necessarily inadmissible simply because it is cumulative of the state's evidence-in-chief or because it would have been better procedure to offer it as part of the state's evidence-in-chief instead of rebuttal." *State v. Petty,* 967 S.W.2d 127, 141 (Mo.App. E.D.1998) (citing *State v. Arnold,* 859 S.W.2d 280, 282 (Mo.App. E.D.1993)). Further, if the defendant raises an issue directly or by implication, the prosecutor can present otherwise "inadmissible testimony to counteract the negative inference the defense has injected into the case." *Martin,* 211 S.W.3d at 653.

■ The trial court neither erred nor abused its discretion in admitting the photograph in rebuttal. If Campbell had not presented evidence by testifying on his own behalf, the State would not have been able to present the photograph as the State had already rested their case-in-chief. By testifying, Campbell opened himself up to the State's rebuttal concerning his reasonable belief that the victim was seventeen years of age or older. The photograph directly rebutted his reasonable belief defense.

■ Campbell cannot now "complain about matters brought into the case by his own evidence." *State v. Hamilton,* 892 S.W.2d 371, 379 (Mo.App. E.D.1995). During direct-examination, Campbell testified that he thought the victim was eighteen years old because she had told him. Campbell also testified that he had no reason to assume the victim was lying about her age. The State was entitled to rebut this testimony with the photograph. Further, the State had the right to raise the issue and cross-examine Campbell concerning the victim appearing eighteen; the State then had the right to rebut this testimony with the photograph, even if Campbell did not originally elicit this question and answer during his direct-examination testimony. We defer to the trial court's discretion whether to allow the admission of rebuttal evidence. *Smith,* 265 S.W.3d at 878.

■ Campbell also contends that the State violated Rule 25.03 by not disclosing the photograph in discovery. Rule 25.03(A)(6) specifically requires the State to turn over to the defendant "[a]ny books, papers, documents, photographs, or objects, which the state intends to introduce into evidence at the hearing or trial or

which were obtained from or belong to the defendant." Campbell filed his original discovery request which covered Rule 25.03(A)(6) on May 4, 2009 and again filed another discovery request on June 8, 2009 which also covered Rule 25.03(A)(6). The State complied with all other discovery requests, but did not turn over the photograph to Campbell. For review, we must answer two questions: (1) did the State's failure to disclose the photograph violate Rule 25.03, and (2) if the State violated Rule 25.03, what sanction was the trial court required to impose. *State v. Whitfield,* 837 S.W.2d 503, 507 (Mo. banc 1992).

■ By analogy, the State is required under Rule 25.03 to disclose by endorsing the names of all witnesses who the State intends to call at any hearing or at the trial. Rule 25.03(A)(1). But there is no obligation for the State to disclose rebuttal witnesses, unless they are called to rebut a defense of alibi or mental disease or defect. *State v. Curtis,* 544 S.W.2d 580, 582 (Mo. banc 1976); *State v. Young,* 781 S.W.2d 212, 216 (Mo.App. E.D.1989). Under Rule 25.05(A)(4) and (5), defendants must disclose their alibi witnesses and intent to rely on a defense of mental disease or defect, and accordingly, the State must disclose rebuttal witnesses for these issues. *Curtis,* 544 S.W.2d at 582 (citing *Wardius v. Oregon,* 412 U.S. 470, 476, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973)). But in this case, Campbell was not required under Rule 25.05 to disclose his defense regarding his reasonable belief of the victim's age. Therefore, the State should not have been required to disclose potential rebuttal evidence as the State was unsure exactly what Campbell's defense was until presented at trial.

Campbell attempts to use *State v. Childers,* 852 S.W.2d 390 (Mo.App. E.D.1993), to persuade our court to extend such alibi and mental disease disclosure requirements recognized by the *Curtis* court to cover in essence all rebuttal physical evidence. Campbell's reliance on *Childers* is misplaced as the material that the State failed to disclose until the day of trial involved evidence that the State intended to use in its case-in-chief. 852 S.W.2d at 391. It was not rebuttal evidence. Further, part of the evidence not disclosed by the State was the substance of the defendant's incriminating oral statements to security guards which is far different in nature than the photograph in dispute here. *Id.*

■ In *State v. Moten,* the State failed to disclose two lineup photographs which the State used in redirect examination to derail defendant's cross-examination that the lineup participants were dissimilar. 542 S.W.2d 317, 320 (Mo.App. W.D.1976). The court affirmed the trial court which had ruled that "the photographs were in the nature of rebuttal and their use produced no unfairness rising to constitutional proportions." *Id.* We decline to extend *Curtis* protections to cover the State's rebuttal photograph and we do not find that the State violated Rule 25.03.

Campbell also contends that the State violated its duty to disclose the photograph under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To prevail on a *Brady* violation claim for failure to turn over the photograph, Campbell had to "show each of the following: (1) the evidence at issue is favorable to him, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) he was prejudiced." *State ex rel. Engel v. Dormire,* 304 S.W.3d 120, 126 (Mo. banc 2010).

■ Campbell's *Brady* argument fails for many reasons, but the simplest explanation is that the photograph Campbell challenged did not trigger *Brady* protec-

tion, because the photograph was inculpatory in nature and not exculpatory or impeaching. *U.S. v. Garcia,* 567 F.3d 721, 735 (5th Cir.2009)(photos introduced in evidence that Government failed to turn over in discovery did not violate *Brady* as they were inculpatory); *Dormire,* 304 S.W.3d at 127. Campbell failed to prove that the photograph was favorable to him. *State v. Reed,* 334 S.W.3d 619, 626 (Mo.App. E.D. 2011).

As this court has found that the photograph was proper rebuttal evidence and the State did not violate Rule 25.03 or *Brady,* we do not need to discuss Campbell's argument regarding prejudice. Campbell's point is denied.

*Conclusion*

The judgment is affirmed.

CLIFFORD H. AHRENS, P.J., and ROY L. RICHTER, J., concur.