STATE ex rel. William J.
SITTON, Petitioner,

v.

Jeff NORMAN, Warden, Respondent.

No. SC 93020.

Supreme Court of Missouri,
En Banc.

July 30, 2013.

Rehearing Denied Oct. 1, 2013.

Craig A. Johnston, Public Defender's Office, Columbia, for Sitton.

Stephen D. Hawke, Attorney General's Office, Jefferson City, for the State.

## RICHARD B. TEITELMAN, Judge.

William Sitton was convicted of involuntary manslaughter in the first degree, section 565.024, and armed criminal action, section 571.015. Sitton filed a petition for a writ of habeas corpus alleging that the trial court permitted otherwise qualified jurors to opt out of jury service by agreeing to perform community service. Sitton argues that this opt-out practice entitles him to habeas relief because it constitutes a fundamental and systemic failure to comply with the jury selection requirements sections 494.400–494.505.[1] Finding no claim

---

1. Sitton's point relied on alleges that the opt-out practice violates Missouri's jury selection statutes, sections 494.400–494.505, as well as his state and federal constitutional rights to due process, equal protection and a jury drawn from a fair cross-section of the population. Sitton does not specifically develop his constitutional claims in the text of his argument and, instead, focuses his argument on the alleged violation of the jury selection statutes. When a party identifies an error in a point relied on but does not support this allegation of error in the argument portion of a brief, that portion of the point relied on is abandoned. *See 8000 Maryland, LLC v. Huntleigh Fin. Services Inc.*, 292 S.W.3d 439, 445

warranting relief, the petitioner is remanded to the custody of the respondent.

## I. Background

In 2005, a Lincoln County jury convicted Sitton of involuntary manslaughter and armed criminal action. The circuit court sentenced Sitton to consecutive terms of seven and 18 years imprisonment. The convictions and sentences were affirmed on direct appeal. *State v. Sitton*, 214 S.W.3d 404 (Mo.App.2007). The circuit court denied Sitton's motion for post-conviction relief. The court of appeals affirmed the judgment. *Sitton v. State*, 294 S.W.3d 137 (Mo.App.2009). Sitton did not raise any issue regarding defects in the jury selection process in his direct appeal or during post-conviction proceedings.

At the time of Sitton's trial, the circuit court of Lincoln County allowed jurors to opt out of service by agreeing to perform community service and paying a $50 fee. Sitton alleges he was unaware of this practice until October 18, 2010, after the court of appeals held that Lincoln County's opt-out practice violated Missouri's jury selection statutes. *See Preston v. State*, 325 S.W.3d 420 (Mo.App.2010). On October 25, 2010, Sitton filed a motion for a new trial alleging that the opt-out practice was a fundamental and systemic violation of the statutory jury selection requirements. The circuit court denied the motion.

Sitton filed a petition for a writ of habeas corpus asserting that the opt-out practice violated the jury selection statutes. Sitton alleged that five prospective jurors elected to opt out of jury duty by agreeing to perform community service. Sitton alleged that the illegality of this practice entitled him to a new trial. The circuit court and the court of appeals denied Sit-

ton's petition. Sitton then filed his writ petition with this Court.

## II. Habeas Corpus

 "[A] writ of habeas corpus may be issued when a person is restrained of his or her liberty in violation of the constitution or laws of the state or federal government." *State ex rel. Griffin v. Denney*, 347 S.W.3d 73, 76–77 (Mo. banc 2011). Habeas proceedings are limited to determining the facial validity of a petitioner's confinement. *Denney*, 347 S.W.3d at 77. Sitton has the burden of proving he is entitled to habeas corpus relief. *Id.*

Sitton's claim that the opt-out practice violated Missouri's jury selection statutes was cognizable on direct appeal and in his Rule 29.15 motion for post-conviction relief. The state asserts that the failure to raise these claims earlier constitutes a procedural default precluding review of Sitton's claim. Sitton argues that his claim is timely pursuant to section 494.465.1 and, alternatively, that he can satisfy the "cause and prejudice" standard for obtaining review of a procedurally defaulted claim. The parties contest the facts pertaining to when Sitton knew or should have known of the Lincoln County opt-out practice. It is unnecessary to resolve this dispute because the undisputed facts demonstrate Sitton has not established prejudice warranting habeas relief.

## III. Missouri's jury selection statutes

Sections 494.400–505 provide the framework for jury selection in Missouri. *Preston* 325 S.W.3d at 423. Section 494.400 provides that "[a]ll persons qualified for grand or petit jury service ... shall be selected at random from a fair cross sec-

(Mo.App.2009). Consequently, this opinion does not address any state or federal constitutional requirements for jury selection.

tion of the citizens of the county" and that all qualified Missouri citizens have "an obligation to serve as jurors when summoned for that purpose, unless excused." There are two grounds on which a citizen may be disqualified from jury duty: (1) ineligible persons and (2) persons entitled to be excused. *See* sections 494.425 (ineligibility) and section 494.430 (excusal).

The statutes provide that each county in Missouri must have a board of jury commissioners. Section 494.405. The board is required to compile a "master jury list" for the county. Section 494.410. Consistent with the statutory requirement that jurors are selected randomly from a fair cross-section of the population, the master jury list contains a "random selection of names from a minimum of two government records." *Id.* The master jury list must contain at least 400 names and must constitute at least 5 percent of the county's total population. *Id.* From the master list, the board randomly draws the names of as many prospective jurors as a trial court may require for a term. Section 494.415. When a prospective juror's name is drawn, the board sends that individual a "juror qualification form." *Id.* This form is designed to "[e]llicit information concerning the prospective juror's qualifications." *Id.*

If a prospective juror is not ineligible pursuant to the ineligibility provisions of section 494.425, that individual may be excused from service by the court if he or she satisfies one of the five enumerated categories for in section 494.430. Section 494.430 provides that, if an individual makes a timely application, the court may excuse such individual from jury service. For example, a judge may excuse an individual from jury service if the judge determines that serving as a juror would impose "an undue or extreme physical or financial hardship" on that individual. *Id.*

After prospective jurors are determined ineligible or are excused from service, the remaining names are compiled into the "qualified jury list." Section 494.415. Whenever a judge of the circuit court requires a panel of jurors for jury service, the judge shall designate the number of jurors required. Section 494.420. The board then will draw this number randomly from the qualified jury list and summon the prospective jurors to appear at the courthouse. *Id.*

The foregoing procedures, as well as the plain language of section 494.400, demonstrate that Missouri's jury selection statutes are drafted to ensure that juries are comprised of a random sample of eligible jurors drawn from a fair cross-section of the population. Section 494.465.1, on which Sitton relies, establishes the procedure for a party to enforce the jury selection process prescribed by section 494.400–494.505. Section 494.465.1 provides:

> A party may move to stay the proceedings or for other appropriate relief including, in a criminal case, to quash the indictment if there has been a substantial failure to comply with the declared policy of sections 494.400 to 494.505 in selecting a grand jury, on the ground of substantial failure to comply with the provisions of sections 494.400 to 494.505. Such motion may be made at any time before the petit jury is sworn to try the case or within fourteen days after the moving party discovers or by the exercise of reasonable diligence could have discovered the grounds therefor, whichever occurs later.

## IV. Sitton's Claim

■ Sitton alleges that the Lincoln County circuit court allowed five individuals on the "qualified jury list" to opt out of jury duty by agreeing to perform community service. Sitton claims that this prac-

tice is a substantial failure to comply with the jury selection statutes and that *Preston* is dispositive.

In *Preston,* the appellant argued that the motion court erroneously denied his Rule 29.15 motion for post-conviction relief in which Preston argued that the Lincoln County opt-out practice required a reversal of his conviction and new trial. 325 S.W.3d at 421. The court of appeals reasoned that the procedural irregularity of removing judicial discretion from the excusal of jurors was so great as to demonstrate actual and in fact prejudice. *Id.* at 425–26. The court held that the Lincoln County opt-out practice constituted a substantial failure to comply with the jury selection statutes. *Id.* at 426. Similarly, in *State ex rel. Koster v. McCarver,* 376 S.W.3d 46, 54 (Mo.App.2012) the court affirmed the circuit court judgment granting a writ of habeas corpus and ordering that the petitioner be remanded to Lincoln County for a new trial. In both cases, the courts reasoned that the practice of allowing otherwise qualified jurors to opt out of jury service was a fundamental and systemic deviation from the jury selection statutes because it allows an otherwise qualified citizen to be excused from serving without a discretionary judicial determination as to ineligibility or legitimate grounds for excusal from service. *Preston,* 325 S.W.3d at 426.

Sitton's claim is similar to the claims raised in *Preston* and *McCarver,* and he asserts that those cases are dispositive. Sitton is correct that the Lincoln County opt-out practice is not authorized by the jury selection statutes. As noted in *Preston,* there is no provision in the statutes that allows an otherwise qualified juror to opt out of jury duty by agreeing to perform community service. Although section 494.450 allows a circuit judge to impose community service, the statute provides

that the circuit judge can do so only after a person summoned to appear for jury service "willfully fails to appear" without first obtaining a postponement pursuant to section 494.432, obtaining an excuse pursuant to section 494.430 or by failing to respond to a juror qualification form. In this case, the jurors participating in the opt-out program were all "qualified" jurors who were, by definition, eligible to serve and had not obtained an excuse.

Contrary to Sitton's argument, the fact that the opt-out practice allowed otherwise qualified jurors to perform community service in lieu of jury service does not necessarily mean that the Lincoln County opt-out practice as applied in this case constitutes a substantial failure to comply with the jury selection statutes. In *State v. Anderson,* 79 S.W.3d 420, 431 (Mo. banc 2002), this Court held that a substantial failure to comply with the jury selection statute "is one that either rises to the level of a constitutional violation, and/or that actually prejudices a defendant." The Court qualified this holding by recognizing that "[i]n rare cases, certain violations of the statutory jury selection requirements may be so fundamental or systemic in nature as to amount to a "substantial" failure to comply with the statutes, thereby entitling a defendant to relief, even in the absence of a clear showing of actual prejudice or of a constitutional violation." *Id.* at 431 n. 4. *Anderson* cited *State v. Gresham,* 637 S.W.2d 20, 26 (Mo. banc 1982), as an example of a "rare" case in which a statutory violation alone could constitute substantial failure to comply with the jury selection statutes.

In *Gresham,* the county board of jury commissioners removed certain individuals from a jury list, not because of statutory ineligibilities or because they had been excused from service by the court, but because the board members asserted that

they knew the members of their community and that the removed individuals would be either too harsh or too lenient to make good jurors. *Id.* at 637 S.W.2d at 22–23. This Court held that, even though the defendant had not demonstrated actual prejudice due to this violation of the jury selection statutes, the practice substantially departed from the policy of the jury selection statutes because it "readily lends itself to jury packing." *Id.* at 26.

Similarly, in *State v. Sardeson,* 174 S.W.3d 598, 601 (Mo.App.2005), and *Hudson v. State,* 248 S.W.3d 56, 60 (Mo.App. 2008), the courts held that a computer error that caused prospective jurors to be seated in the courtroom according to their ages constituted a substantial failure to comply with the jury selection statutes because it "destroyed the randomness of the jury selection." Consistent with fundamental purpose of the jury selections statutes as expressed in section 494.400, the premise of *Gresham, Sardeson* and *Hudson* is that a substantial failure to comply with the jury selection statutes will arise if the procedural irregularity substantially interferes with the goal of randomly selecting a jury from a representative cross-section of the community.

Sitton's claim that five prospective jurors were excused improperly from service does not constitute a "substantial failure" to comply with the jury selection statutes. Sitton does not allege how many people were summoned for jury duty during the court term when the trial was conducted. There is simply no way to assess the extent to which the improper excusal of the five jurors impacted the randomness of jury selection. Although the opt-out practice interferes with the random selection of otherwise qualified jurors, Sitton has not demonstrated that allowing five prospective jurors to opt out of service substantially interfered with the selection of jurors

in his case or undermined the confidence in the verdict. The petitioner is remanded to the custody of the respondent.

RUSSELL, C.J., BRECKENRIDGE, FISCHER, STITH and WILSON, JJ., concur. DRAPER, J., dissents.