In the Missouri Court of Appeals
 Western District

STATE OF MISSOURI, )
 Respondent, ) WD84284
v. )
 )
KYLE MATTHEWS, ) FILED: March 15, 2022
 Appellant. )

 APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
 THE HONORABLE KEVIN CRANE, JUDGE

 BEFORE DIVISION THREE: ANTHONY REX GABBERT, PRESIDING JUDGE,
 LISA WHITE HARDWICK, AND THOMAS N. CHAPMAN, JUDGES

 Kyle Matthews appeals his convictions and sentences for child abuse and

delivery of a controlled substance. He contends the circuit court’s procedure for

seating prospective jurors for voir dire failed to comply with statutes and violated

his rights to due process and a properly selected jury. For reasons explained

herein, we find no error and affirm.

 FACTUAL AND PROCEDURAL HISTORY

 In February 2017, Matthews lived in Columbia in a home he shared with a

female friend and her six-month-old son. On February 21, 2017, Matthews was

selling marijuana out of his home and babysitting the child when he called the

child’s mother and told her that the child had fallen from the couch and “most
likely” hit his head on the coffee table. The child was taken to the hospital, where

an ophthalmologist assessed that his eye injuries were consistent with his having

been shaken. The State charged Matthews with child abuse and delivery of a

controlled substance.

 The court set the case for a jury trial to begin on November 17, 2020. A

week before trial, Matthews filed a motion for a continuance and an identical

motion to stay the proceedings. He argued the Covid-19 pandemic prevented the

court from complying with Chapter 494’s jury selection procedures. Specifically,

he asserted the pandemic had disproportionately affected the African-American

community and, as a result, would prevent him, an African-American man, from

having a jury drawn at random from a fair cross-section of the community.

Matthews requested the trial be continued until after the pandemic had abated to

a point that would allow a jury representing a fair cross-section of the community

to be called. During a subsequent pretrial conference, the court heard and

overruled both motions. The court also informed the parties that, instead of

having the entire venire panel report for voir dire at the same time, one group of

potential jurors would arrive at 8:00 a.m. for questioning, and a second group of

potential jurors would arrive at 12:30 p.m.

 There were 75 total venire panel members for this case. Thirty-seven of

them arrived at 8:00 a.m. on the morning of trial. These potential jurors were

numbered and seated in the order they arrived at the courthouse. After the court

finished its questioning of this group but before the parties began their

 2
questioning, Matthews’s counsel argued in chambers that the first group of the

venire panel was not a randomized panel:

 [MATTHEWS’S COUNSEL]: I just want on the record, the jury panel
 that is now being submitted to voir dire was accumulated by and
 numbered by whoever came into the courthouse first. So, the
 randomized system that had been set up by the jury selection person
 here has been abandoned, and basically the people who’ve come in
 are just whoever got here first. And I – again, I believe that’s a
 randomized – not a randomized panel at all, and I believe it – you
 know, it’s not a fair cross section.

 THE COURT: Why do you think the process of randomness has been
 abandoned?

 [MATTHEWS’S COUNSEL]: Well, because it’s just based on who
 came in first. It’s not based on –

 THE COURT: No, it’s not. The panel was called in, and the “who
 seated first” issue is who arrived first. So, I don’t know if Number 1 –
 Number 1 happened to arrive first, but I didn’t know he would. But
 he’s still randomly selected as a juror. So nothing has been
 abandoned.

 [MATTHEWS’S COUNSEL]: Your Honor –

 THE COURT: We just didn’t use the jury room to number them based
 on who they are; we used the courtroom, out of an abundance of
 caution due to COVID. We had them come directly into court and not
 have them wait around –

 [MATTHEWS’S COUNSEL]: I understand.

 THE COURT: -- and be together. So nothing’s been abandoned. It’s
 totally random. Anything further on that?

 [MATTHEWS’S COUNSEL]: No, Your Honor.

 3
 After the parties conducted their questioning of the first group, the court

heard and ruled on the parties’ strikes for cause of those potential jurors. The

second group of the venire panel, which consisted of 38 potential jurors, arrived in

the afternoon, and the same procedure was followed. Following strikes for cause

of the second group, the court determined that, to get 24 qualified jurors from the

entire venire panel, it would need to go up to juror number 54. To get four

qualified alternates, the court went up to juror number 67. The parties then made

their peremptory strikes, and 12 jurors and two alternates were seated. Of the 75-

member venire panel, the court noted that only three potential jurors, numbers

68, 73, and 74, were “excess,” that is, panel members who were not seated on the

jury and who were not disqualified, excused for hardship or by agreement, struck

for cause, or peremptorily struck.

 Trial was held. The jury found Matthews guilty on both counts. The court

sentenced Matthews to consecutive terms of 15 years in prison for child abuse

and four years in prison for delivery of a controlled substance. Matthews appeals.

 STANDARD OF REVIEW

 Whether the circuit court properly interpreted and applied statutes in

selecting the jury is an issue of law, which this court reviews de novo. See State

v. Storer, 368 S.W.3d 293, 295 (Mo. App. 2012).

 ANALYSIS

 In his sole point on appeal, Matthews contends the circuit court erred in

overruling his objection to the procedure for seating jurors for voir dire because

 4
the jurors were not seated at random as Chapter 4941 requires. He asserts the

court’s “substantial failure to comply” with the jury selection statutes violated his

right to due process and entitles him to relief even though he cannot demonstrate

actual prejudice.

 “Missouri’s jury selection statutes are drafted to ensure that juries are

comprised of a random sample of eligible jurors drawn from a fair cross-section of

the population.” State ex rel. Sitton v. Norman, 406 S.W.3d 915, 917 (Mo. banc

2013). Specifically, Section 494.400 states, in pertinent part, “All persons

qualified for grand or petit jury service shall be citizens of the state and shall be

selected at random from a fair cross section of the citizens of the county.”

(Emphasis added). Section 494.415.1 provides, in pertinent part, “From time to

time and in a manner prescribed by the board of jury commissioners there shall

be drawn at random from the master jury list the names or identifying numbers of

as many prospective jurors as the court may require.” (Emphasis added.) Lastly,

Section 494.420.2 provides, “Whenever a judge of the circuit court shall require a

panel of jurors for jury service, he shall designate the number of jurors required.

This number of jurors shall be randomly selected in a manner specified by the

board of jury commissioners from the qualified jury list.” (Emphasis added.)

 The “exclusive means” by which a party can challenge a jury on the basis

that it was not selected in conformity with Chapter 494’s provisions is contained in

1
 All statutory references are to the Revised Statutes of Missouri 2016.

 5
Section 494.465. § 494.465.3. Section 494.465.1 provides that, whenever there

has been a “substantial failure to comply” with the jury selection statutes, “[a]

party may move to stay the proceedings or for other appropriate relief including,

in a criminal case, to quash the indictment.” § 494.465.1. A “substantial failure to

comply” with jury selection statutes “is one that either rises to the level of a

constitutional violation, and/or that actually prejudices a defendant.” Sitton, 406

S.W.3d at 918 (quoting State v. Anderson, 79 S.W.3d 420, 431 (Mo. banc 2002)).

 Matthews admits that “no prejudice can be shown [from] seating people in

order of their arrival.” Furthermore, he acknowledges that, through strikes for

cause, peremptory strikes, hardships, and the choosing of alternates, “most of the

jury panel was used.” Because he cannot show actual prejudice, Matthews relies

on the Supreme Court’s recognition that there may be “rare cases” in which

“certain violations of the statutory jury selection requirements may be so

fundamental or systemic in nature as to amount to a ‘substantial’ failure to

comply with the statutes, thereby entitling a defendant to relief, even in the

absence of a clear showing of actual prejudice or of a constitutional violation.”

Sitton, 406 S.W.3d at 918 (quoting Anderson, 79 S.W.3d at 431 n.4). Examples of

these “rare cases” include State v. Sardeson, 174 S.W.3d 598, 601 (Mo. App.

2005), and Hudson v. State, 248 S.W.3d 56, 60 (Mo. App. 2008), two cases in which

a computer error caused prospective jurors to be seated for voir dire in

chronological order according to their ages. Sitton, 406 S.W.3d at 919. Although

neither of the defendants in Sardeson and Hudson were able to show actual

 6
prejudice, a substantial failure to comply with the jury selection statutes occurred

because “the procedural irregularity substantially interfere[d] with the goal of

randomly selecting a jury from a representative cross-section of the community.”

Sitton, 406 S.W.3d at 919.

 Matthews argues his case is “almost directly on point” with Sardeson. We

disagree. Seating potential jurors for voir dire in the order they arrived at the

courthouse is not at all similar to seating potential jurors for voir dire in

chronological order of their ages. No one could have possibly predicted the order

in which the randomly-selected potential jurors would arrive at the courthouse.2

See State v. Boston, 910 S.W.2d 306, 312-13 (Mo. App. 1995). The randomness of

the jury selection process remained completely intact and undisturbed.

 While Matthews asserts that a better procedure would have been to pre-

assign numbers to the potential jurors in each group and have them sit in

assigned seats in the courtroom based on those numbers, we fail to see how

seating the potential jurors in the order they arrived at the courthouse was in any

way less random than his proposed procedure. Matthews has failed to

demonstrate that the court committed a violation so fundamental or systemic in

nature that it constituted a substantial failure to comply with the jury selection

statutes. Point denied.

2
 Matthews does not allege error in the court’s decision to divide the venire panel into two groups
of potential jurors who reported for voir dire at two different times of the day. Rather, his claim of
error concerns only the court’s decision to seat the potential jurors in each of the groups in the
order they arrived at the courthouse.

 7
 CONCLUSION

 The judgment is affirmed.

 ____________________________________
 Lisa White Hardwick, Judge

All Concur.

 8